### SLEIGHT v. UNITED STATES.

No. 6517.

United States Court of Appeals for the District of Columbia.

Argued Nov. 4, 1935.

Decided Jan. 20, 1936.

Joseph C. Turco, of Washington, D. C., for plaintiff in error.

David A. Hart, of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

VAN ORSDEL, Associate Justice.

Plaintiff in error, defendant below, was convicted in the police court of the District of Columbia of the crime of larceny for the stealing of certain micrometers of the value of $65.25. At the conclusion of evidence, defendant moved the court for a directed verdict, on the ground, among others, that "there was not substantial evidence necessary to support a conviction; and fifthly, that one partner is not chargeable with the criminal acts of his co-partner, acting on behalf of the firm, unless he has knowledge himself thereof." The court overruled the motion and submitted the case to the jury, and, from a verdict of guilty and the judgment thereon, the case comes here on writ of error.

We think that the record discloses a total lack of substantial evidence to sustain the verdict of conviction. It appears

that plaintiff in error, Sleight, together with one Hunter, were copartners engaged in the business of repossessing cars. Hunter had charge of their business of repossessing cars in the District of Columbia, and Sleight had charge of their business outside of the District.

The testimony discloses in support of the government's case that the Robey-Lambert-Diesel Engine Company, alleged in the information to be a body corporate, was the owner of the "six pairs of micrometers all of the value of $65.25," the property alleged to have been stolen. Edward B. Robey, chief engineer of the company, testified that on the morning of December 11, 1934, between the hours of 11 and 12 o'clock, he placed the micrometers in question in a Chevrolet automobile, over which he had control, which was parked on United States government property for employees of the Treasury Department, located at 119 D Street Northeast, in the city of Washington.

He further testified that the micrometers were in a canvas bag; that he placed them in the rear of the automobile and locked the automobile. He is corroborated in this by one Graves, who brought the micrometers to Robey and saw Robey place the bag with the micrometers in the rear of the car and lock the car. A witness Smith testified that he was the sergeant in charge of guards, and that between 11 and 12 o'clock, on the morning in question, he saw Graves carrying a canvas bag toward the east entrance, that Graves took the bag to Mr. Robey who was then working on his automobile, and witness saw Robey place the canvas bag in the automobile.

None of these witnesses saw any one take the car away from the place where it was parked. Robey and Smith each testified that defendant, Sleight, the next day had admitted to them over the telephone that he "had the automobile," and that Sleight added in each instance the inquiry as to what they were going to do about it. On this testimony the government rested its case.

Defendant moved for a directed verdict, which motion was denied. He then offered as his first witness John Hunter, his partner in the business of repossessing automobiles. Hunter testified that on December 11, 1934, he and one Ray found the car which they had authority to repossess at 119 D Street Northeast; that

they pushed the car out of the parking place, got it started, and drove it to the Gish garage. Witness testified that, when he found the car, the glass on the left front door was broken and the car was not locked; that, when he took the car to the garage and placed it in storage, "he did not at that time look in the rear of the car, but he did look in the rear of the car some four or five days later, but there were no micrometers in the car."

He further testified that "the defendant Sleight was not present at the time of the repossession of the automobile; that he had no knowledge that that particular automobile was to be repossessed, and that Sleight knew nothing whatever about either the automobile or the micrometers, if there were any in the car." Witness also testified that when he looked in the rear of the car he found the canvas bag, but there were no micrometers there.

Defendant, Sleight, testified that he had nothing to do with the repossession of the automobile; that he knew nothing about the repossession until December 12, 1934, "when he received a phone call from Edward B. Robey, and after making a search found that the car had been repossessed."

Defendant further testified that in a conversation with Robey he told him, "I have your car, and if you will pay the money that you owe to Bailey Tire Stores, and the repossession fees we will return your car to you."

Defendant further testified that no mention was made to him by Robey or any one else that there were any micrometers in the car until the 18th day of December, 1934; that he knew nothing about the micrometers and had never seen them; that it was the practice of the firm for himself to repossess out-of-town cars, and Hunter to take care of the repossession of local cars; that very often the partners did not see each other for several days, because of his absence in repossessing out-of-town cars; that Hunter kept the books of the firm; and that at the end of the month the proceeds were divided between them.

■ At this point defendant closed his case and moved the court for a directed verdict. This court has uniformly held that in criminal cases the trial court is not justified in directing a verdict where there

is substantial evidence upon which the jury may base a conviction; and the court has been cautious in sustaining directed verdicts in criminal cases, lest it may lead to an abuse of discretion on the part of the trial magistrate. But in this case, from the foregoing review of all the evidence disclosed by the record, we are unable to find any substantial evidence upon which the conviction of the defendant can be sustained. The automobile was not stolen. It came lawfully into the possession of defendant and his partner. The fact that the glass in the door was broken and the car was unlocked when Hunter and Ray found it is uncontradicted. The micrometers were not traced into the possession of the defendant, nor ever located so far as the record discloses. The guilt of the defendant is therefore based upon the mere guess and speculation of the jury.

Counsel for the government in their brief lay great stress upon the right of the jury to draw inferences and deductions from the evidence; but inferences and deductions which the jury may be permitted to draw must be based upon some substantial evidence tending to establish the guilt of the defendant. Otherwise to permit the jury to convict upon inferences and deductions would merely mean to permit the jury to speculate as to the guilt of the defendant. This sort of procedure the courts uniformly condemn.

It is also urged by counsel for the government that Sleight and Hunter were copartners, and that Sleight is responsible for the acts of Hunter in taking the automobile from the government parking space to the Gish garage; and that any criminal delinquency that Hunter may have been guilty of in connection with this transaction is chargeable to the defendant. This is not the law. A partner is not liable for the criminal acts of a copartner unless he possesses guilty knowledge of the criminal act of his copartner or is an accessory thereto either before or after the fact. The liability of copartners in civil cases, for the acts of each other, respecting partnership affairs, does not attach to criminal transactions.

In this view of the case, it is unnecessary to consider the other errors assigned.

The judgment is reversed.