**YOFFE et al. v. UNITED STATES.**

No. 3993.

Circuit Court of Appeals, First Circuit.

Feb. 14, 1946.

See also 52 F.Supp. 175.

C. Keefe Hurley, of Boston, Mass. (Joseph E. Casey and Anthony Brayton, both of Boston, Mass., of counsel), for appellants.

Joseph M. Hargedon, Asst. U. S. Atty., and Edmund J. Brandon, U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, Eugene E. Beyer, and Walter M. Campbell, Jr., Sp. Assts. to Atty. Gen., for appellee.

Before ALBERT LEE STEPHENS, MAHONEY, and WOODBURY, Circuit Judges.

STEPHENS, Circuit Judge.

Eli Yoffe and William S. Krasnow, in three indictments, were charged with conspiring wilfully to attempt an evasion of income and excess profits taxes in connection with Yoffe-Krasnow, Inc., and each with wilfully attempting to evade his individual income taxes.[1] Verdicts of guilty were returned, and sentences were pronounced. The two men appealed, claiming error in the trial court's failure to direct verdicts for them in the absence of sufficient evidence to warrant submission of the issues to the jury, in the court's failure to give certain instructions to the jury, and in its failure to submit to the jury for its deliberation the bills of particulars filed by the government.

In 1928 Yoffe, Krasnow, and Lincoln S. Fifield organized "Fifield-Yoffe-Krasnow, Inc.," under the corporate laws of Massachusetts for the purpose of dealing in wool rags. The three incorporators subscribed and paid in cash for all the authorized capital stock of the Company—50 shares of common stock to each, 300 shares of preferred to Yoffe, and 550 shares of preferred to Krasnow. The shares, preferred and common alike, had a par value of $100 each. All the incorporators had engaged in the wool rag business prior to the formation of the corporation, Yoffe and Krasnow each in partnership with members of his own family and Fifield as manager of a branch office. At the time the concern was formed the Yoffes and Krasnows had on

---

[1] § 37 of the Criminal Code, 18 U.S.C.A. § 88; and § 145(b) of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Code, § 145(b).

hand rather large stocks of merchandise, which were not any part of the capital of the new enterprise. Fifield dropped out after two years, selling half his stock to Yoffe and half to Krasnow. The corporate name was then changed to Yoffe-Krasnow, Inc., hereinafter sometimes called the corporation. On January 16, 1936, the corporation voted to dissolve. Krasnow and his family organized a new corporation called Krasnow Wool Stock Company, and Yoffe became interested in another corporation called Glaser-Yoffe, Inc.

Indictment No. 16,101 charged appellants with conspiracy to evade and defeat the income and excess profits taxes of Yoffe-Krasnow, Inc., for the years 1934, 1935, and 1936. According to the allegations of the indictment the conspiracy consisted of filing for those three years tax returns in which the net income of the corporation was grossly understated, of selling goods of the corporation under the name of "YK ,Associates" and preventing the recordation of such sales on the corporation's books, and of diverting large ,sums of the corporation's sales receipts into bank and brokerage accounts of appellants.

In 1934 sales of woolen rags were made by YK Associates to B. D. Kaplan and Company of New York. The rags were billed and checks in payment were received in the name of YK Associates. Proceeds from the sales of over $100,000 were deposited to personal accounts of Krasnow, Yoffe, and Yoffe's brother-in-law in banks or brokerage firms except for approximately $2000 deposited in a Yoffe-Krasnow, Inc., bank account. Appellants claim they were engaged in business as partners under the name of YK Associates and that the goods sold by the partnership belonged to them individually and not to the corporation. Their shares of the total receipts from the sales in 1934 were not reported in the appellants' individual income tax returns for that·year.

Similarly, in 1935 sales of merchandise were made by YK Associates to B. D. Kaplan & Company and the proceeds deposited in personal or relatives' bank and brokerage accounts, to Yoffe's credit in a finance company, or credited to appellant's accounts on the corporation's books. Also in 1935 the corporation·made certain sales for which checks were drawn to the order of the corporation, but, according to the government, the sales were not included in the corporation's books or in its tax return.

Instead, they were deposited in or credited to various personal accounts of Yoffe and Krasnow.

In 1936 YK Associates sales and certain sales by the corporation to other firms were not reflected in the corporation's 1936 tax return. Receipts appeared in various accounts of Yoffe and Krasnow. After the corporation voted to dissolve on January 16, 1936, many checks were received in payment for merchandise shipped prior to that date and were deposited by Yoffe and Krasnow in their various accounts. Also, the government accountant determined that the inventory actually distributed at the time of liquidation was considerably larger than the amounts shown on the corporation's books. Therefore, an increased closing inventory which was allegedly not reflected on the corporation's tax returns for 1936 was computed.

Indictment 16,100 and count I of indictment 16,102 charged Yoffe and Krasnow respectively with failing to report the entire amounts of their individual incomes in 1936. The understatements, according to the bills of particulars, involved amounts received in the liquidation of Yoffe-Krasnow, Inc. Those amounts were derived from the same checks discussed in connection with the conspiracy indictment for 1936 and from checks payable to the corporation but credited to personal accounts of Yoffe and Krasnow. Count II of indictment 16,102 charged Krasnow with failing to·report his entire income for 1937. The understatement, according to the bill of particulars, involved proceeds from sales of the Krasnow Wool Stock Company diverted to Krasnow's use, amounts recovered from insurance companies on fire losses of the Stock Company, and returned insurance premiums. All the items were credited to Krasnow's account on the Stock Company's books, or deposited in his personal bank account. Krasnow insists that the Stock Company was a partnership business composed of himself and four others.

 Appellants claim that the evidence before the trial court was insufficient to warrant submission of any of the issues to the jury. They refer to the statement which has often been quoted with approval in federal decisions: "Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused; and where all the substantial evi-

dence is as consistent with innocence as with guilt, it is the duty of the appellate court to reverse a judgment of conviction." Union Pacific Coal Co. v. United States, 8 Cir., 1909, 173 F. 737, 740; United States v. Tatcher, 3 Cir., 1942, 131 F.2d 1002, 1003; Hammond v. United States, 1942, 75 U.S.App.D.C. 395, 127 F.2d 752, 753; Gargotta v. United States, 8 Cir., 1935, 77 F.2d 977, 981; Nosowitz v. United States, 2 Cir., 1922, 282 F. 575, 578.

The statement does not conflict with the general principle that in criminal cases a trial court may not peremptorily direct a verdict if there is any substantial competent evidence before it to support a conviction, Hemphill v. United States, 9 Cir., 1941, 120 F.2d 115, 117; Schefano v. United States, 5 Cir., 1936, 84 F.2d 513, 515; Sleight v. United States, 1936, 65 App.D.C. 203, 82 F.2d 459, 460; Maugeri v. United States, 9 Cir., 1935, 80 F.2d 199, 202, and that on a motion for a directed verdict that view of the evidence most favorable to the government and the inferences reasonably deducible therefrom must be accepted, Bogy v. United States, 6 Cir., 1938, 96 F. 2d 734, 740; Cohen v. United States, 4 Cir., 1933, 67 F.2d 449; Smith v. United States, 1932, 61 App.D.C. 344, 62 F.2d 1061.

■ The scope of an appellate court's inquiry is similarly limited and is outlined by the Supreme Court in Abrams v. United States, 1919, 250 U.S. 616, 619, 40 S.Ct. 17, 18, 63 L.Ed. 1173: "The claim chiefly elaborated upon by the defendants in the oral argument and in their briefs is that there is no substantial evidence in the record to support the judgment upon the verdict of guilty and that the motion of the defendants for an instructed verdict in their favor was erroneously denied. A question of law is thus presented, which calls for an examination of the record, not for the purpose of weighing conflicting testimony, but only to determine whether there was some evidence, competent and substantial, before the jury, fairly tending to sustain the verdict."

Appellants herein, with respect to the conspiracy offense of indictment No. 16,-101, claim an absence of evidence (1) that the merchandise sold by YK Associates belonged to the corporation, (2) that there was a taxable profit from the sales, and (3) that the YK Associates were not reflected as sales on the books and tax returns of the corporation. According to appellants the merchandise was owned by them individually. There was testimony that they owned some rags at the time the corporation was formed in 1928 and that rags had been bought subsequently. However, a government witness mentioned having examined personal property assessment records in certain towns, wherein appellants had indicated the property was kept, and having found thereon only a $7,000 assessment in 1928 and several previous years against M. Yoffe and Sons for personal merchandise and a $2,000 assessment in 1923 or thereabouts. Yoffe testified that the expenses of storing, insuring, and trucking merchandise of YK Associates were met by the corporation but that they were small and, he thought, were charged to his and Krasnow's personal accounts on the corporation's books. According to the testimony of a government witness the receipts from some of the YK Associates sales were credited first to appellants' personal accounts on the corporation's books but were later transferred to the sales account. Appellants attempt to explain away the government testimony, asserting that it is based on a groundless assumption. The evidence is substantial and consistent with the theory that YK Associates sales were sales of Yoffe-Krasnow, Inc.

■ There is also substantial evidence consistent with the view that a taxable profit was derived from the YK Associates sales. The books of the corporation were not available to the revenue investigating agent or for evidence in court as appellants explained in their brief that " * * * after the liquidation of Yoffe-Krasnow, Inc., on January 16, 1936, the books and records of the business were left in the care of Krasnow in the building at 210 Maple Street, Chelsea, where the Krasnow Wool Stock Company commenced doing business. Yoffe never saw the books or records after that. Krasnow stored the books and records in the basement of the building. In the summer of 1938 during a rainy spell the cellar became flooded. In salvaging the merchandise in the cellar the hopelessly ruined stock was thrown into a dump in back of the plant by the employees. Apparently the old books and records disappeared in that process." However, Krasnow, in his sworn statement to revenue agents, claimed the books had been destroyed by a storm flood in June or July, 1938, and had been transferred to a dump and destroyed without his knowledge. Appellee in its brief comments, and we think,

correctly: "Such seemingly careless concern for records at a time when they were being requested by the revenue agents would clearly support the inference that the information contained therein would be harmful to the defendants. This inference coupled with the other evidence as to the contents of the corporation's sales accounts, is clearly sufficient to justify submission to the jury."

In summary it may be said: That the evidence definitely reveals that the corporation was engaged in a profitable enterprise; that the appellants explain a series of sales of the same general nature as that handled by the corporation by themselves as partners under the name of YK Associates; that receipts for such sales were deposited in the various ways and credited and changed about as hereinbefore set out; that after the revenue agent had begun his investigation the books were allowed to be destroyed under most unusual circumstances. These facts certainly show a close relationship between the business of Messrs. Yoffe and Krasnow individually, the business of the profitable corporation of Yoffe-Krasnow, Inc., and the business of the partnership, the YK Associates. The relationship is close enough, as the jury must have concluded, to justify the inference that the YK Associates' sales were in fact profitable sales of the corporation. These facts, together with other evidence about to be discussed, indicate that the YK Associates' returns were fraudulently kept from the corporation's revenue returns. See Gleckman v. United States, 8 Cir., 1935, 80 F.2d 394, 399, and People v. Graves, 1934, 137 Cal.App. 1, 29 P.2d 807, 30 P.2d 508, for discussions on circumstantial evidence.

The existence of proof that the YK Associates' transactions were not reflected as sales in the books and tax returns of the corporation is strongly questioned by appellants. All the corporate records had been destroyed except the general ledger sheets of 1936 and 1937 and the work sheets of the corporation's accountant for 1934, 1935, and 1936; therefore, detailed information was unavailable. However, there is substantial evidence that the sales were not included in the corporate books and tax returns. Krasnow definitely so stated. A government witness, a certified public accountant, testified that from the way the checks for the sales were lined up with credits in the records submitted to him, the sales could not be reflected in sales for the 1935 and 1936 tax returns of the corporation. The accountant also testified positively that the corporate sales, according to the indictment, unreported in 1935 and 1936, were not reflected, as such, on the corporation's records and tax returns. It is unquestioned that the sales involved merchandise owned by the corporation. Appellants take the position that the amounts were included in the corporation's tax returns and suggest explanations for their position. However, they point to no facts in evidence supporting their theories. The accountant's testimony constitutes substantial evidence consistent with guilt.

The revenue agent's testimony was based largely on certain of the corporation's ledger sheets, which were marked Exhibit 101 for identification but were never offered or admitted into evidence. Appellants claim prejudice resulted from the admission of the expert's opinion summarizing the contents of the records because the records were not in evidence nor available for the examination of the jury. The ledger sheets were present throughout the trial. They could have been inspected by appellants; they could have been used as an aid to cross-examination; all or any part of them could have been offered in evidence by appellants. Furthermore, appellants made no move at any time during the trial to strike out the opinion testimony on the ground that the ledger sheets were not in evidence. We find no prejudicial error in the failure to introduce them into evidence. Greenbaum v. United States, 9 Cir., 1935, 80 F.2d 113, 120, 121; Paschen v. United States, 7 Cir., 1934, 70 F.2d 491, 501; Cooper v. United States, 8 Cir., 1925, 9 F.2d 216, 223.

The trial court properly refused to direct a verdict on the conspiracy charge of indictment 16,101.

It is alleged in indictment 16,100 and count I of indictment 16,102 that Yoffe and Krasnow respectively attempted to evade their individual income taxes in 1936 by understating the amounts of their net incomes. The bills of particulars indicated that such understatements involved distributions in the liquidation of Yoffe-Krasnow, Inc. The gross amount received by Yoffe in cash and assets upon liquidation of the corporation is alleged to be $171,168.13 and by Krasnow $202,383.04. Corrections for the costs of stock and for other adjusting items resulted in the

575

amounts of unreported income stated in the indictments, namely $62,067.52 for Yoffe and $52,976.64 for Krasnow. The gross amounts received according to the testimony of the government accountant consisted of a distributive share of the assets in the sum of $79,824.39 for each, an increased closing inventory of $49,479.99 for each, checks, notes, etc., payable to the corporation but deposited in or credited to personal accounts of Yoffe and Krasnow in the sums of $41,191.47 and $71,794.89 respectively, and miscellaneous items of $672.28 and $1,283.77 respectively.

The additional inventory was reached by adding items of $42,111.64 and $16.862.65, which appeared as credits to Yoffe in the opening journal entries of Glaser-Yoffe, Inc. The first was offset by a debit to purchasers and charges, and the notation was made that they were taken over from Yoffe. The second was offset by a debit to an account payable to Yoffe, and the explanation was made that the item was due Yoffe from the predecessor corporation to Glaser-Yoffe, Inc. The amount of $9,494.30 received by Yoffe upon liquidation as shown on the records of Yoffe-Krasnow, Inc., was subtracted, and the difference of $49,479.99 was determined by the government accountant to be a distribution of income to Yoffe in excess of that appearing on the books of Yoffe-Krasnow, Inc. Yoffe told revenue agents that the corporation's inventory was divided equally between Krasnow and himself; therefore, the added inventory of the corporation was considered to be twice the amount distributed to Yoffe, or $98,959.98.

A large part of the liquidation distribution resulted from payments to the corporation in 1936 which were deposited in various personal accounts of appellants. They claim that the sums were payments of accounts receivable of the corporation and that such amounts had already been included in computing the distributive liquidation shares of $79,824.39 to Yoffe and Krasnow. The explanation is plausible in the circumstances but does not necessarily overcome the substantial effect of the government accountant's testimony that the amounts were not reflected on the books or tax returns of the corporation.

Concerning the increased closing inventory of $49,479.99 to Yoffe and to Krasnow, the notations identifying credits to Yoffe's account on the books of Glaser-

Yoffe, Inc., together with Yoffe's statement as to equal distribution on liquidation constitute substantial evidence supporting the charges of individual income tax evasion.

Count II of indictment 16,102 charged Krasnow with understating his individual income in 1937 to the extent of $94,275.89 as a result of diverting to his own use the proceeds of Krasnow Wool Stock Company sales in the amount of $89,272.03, sums recovered from insurance companies on fire loss in the amount of $4,555.20, and a returned insurance premium in the amount of $448.66. Payments for the sales were made to the Stock Company and were credited on its books to the personal account of Krasnow. The testimony indicated that the insurance checks were deposited in Krasnow's personal bank account. Krasnow insists that the amounts represented repayment of an indebtedness of the Stock Company to him and therefore were not taxable income.

The government accountant testified that the credits for sales entered in Krasnow's personal account represented cash flowing to Krasnow through the medium of his account. Furthermore, it would be a most unusual accounting procedure to cancel indebtedness by crediting a creditor's account directly with the proceeds of sales. The same is true of the insurance checks. They were not in any way reflected on the Stock Company's books, a wide departure from ordinary business methods. Krasnow speculates in his brief that the checks may have been a loan or a payment for a debt, but the explanation is not consistent with the evidence as we have briefly outlined it, and he points to no evidence in the case from which an inference could be drawn to support any part of his speculation. There is substantial evidence in the record to support count II of indictment 16,102.

The trial court properly denied the motion for a directed verdict and submitted the case to the jury.

Appellants complain of the trial court's failure to instruct the jury in certain respects. They requested a charge in connection with the YK Associates transactions that unless the jury found a profit from the sales of merchandise, the proceeds were not taxable income. They claim the court gave no clear instruction as to taxable profits.

The jury was told the necessity of finding that defendants "wilfully and knowingly, in an attempt tc defeat and evade a tax which they knew they were obliged to pay, failed to include taxable income in those returns". Again. while discussing specifically individual returns for 1934 and 1935 but while referring generally to the entire tax problem, the trial judge commented: "The mere sale of say $100,000 worth of rag wool does not mean anything because unless that sale shows a profit and shows some income in there, a man does not have to report it." The necessity of finding that the sales returned a profit before they could be found to effect the tax was so logically before the jury by the nature of the case and was made so clear by the court's charge that the jury could hardly have misunderstood it.

Appellants contend that the instructions did not sufficiently cover the factual issue involved in count II of indictment 16,102, and offered an instruction relating thereto which was not given the jury. The court did not use the same language as that used in appellants' requested instruction, but the court's instruction was comprehensive and easily understandable.

Appellants claim that the court erred in failing to give several instructions although no requests for such instructions had been made. Only rarely will a trial court's judgment be reversed for failure to give instructions in the absence of a seasonable request or exception, Stassi v. United States, 8 Cir., 1931, 50 F.2d 526, and then only if the failure to instruct constitutes a basic and highly prejudicial error, Williams v. United States, 1942, 76 U.S. App.D.C. 299, 131 F.2d 21. There is no serious or prejudicial error in the court's instructions herein. On the contrary, we think the charge clearly and adequately presented the issues to the jury.

The indictments involved herein were submitted to the jury for their deliberations, but the bills of particulars referring to indictments No. 16,100 and No. 16,102 were not. Those indictments alleged failure to report "other income" on income tax returns. The bills of particulars explained exactly what was meant by "other income". Appellants argue that the court erred in withholding the bills of particulars from the jury. The bills were read to the jury at the opening of the trial. The nature of the income alleged in the indictments and particularized in the bills was thoroughly covered in the evidence. In the circumstances the failure to submit the bills of particulars to the jury did not constitute prejudicial error.

We find no reversible error in the case.

The judgments of the District Court are affirmed.