**UNITED STATES of America,**
**Plaintiff,**

v.

**Bernard T. McMANUS, Defendant.**
**Cr. No. 6159.**

United States District Court
D. Wyoming.
Dec. 29, 1952.

J. J. Hickey, U. S. Atty., and Harry A. Thompson, Asst. U. S. Atty., Cheyenne, Wyo., for plaintiff.

Archie G. McClintock, Cheyenne, Wyo., and Edwin V. Magagna, Rock Springs, Wyo., for defendant.

T. BLAKE KENNEDY, Judge.

This is a prosecution of defendant by information under Sections 1172 and 1173 of Title 15, U.S.C.A., involving the registration of manufacturers and dealers and the interstate transportation of a gambling device.

A gambling device covered by the statute is defined in Section 1171, Title 15, U.S.C.A., so far as is here material, reads as follows:

"(a) The term 'gambling device' means—

"(1) any so-called 'slot machine' or any other machine or mechanical device an essential part of which is a drum or reel with insignia thereon, and (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (B) by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property; * * *."

Section 1172 makes unlawful the transportation of any such gambling device interstate, with certain exceptions not material here, and Section 1173 provides for the registration of manufacturers and dealers.

The information is in the form of five counts, the first count charges the defendant while being a dealer in gambling devices failed to register his name or trade name, etc. Counts 2, 3, 4 and 5 charge a violation of the statute by interstate transportation of a certain gambling device.

Upon the trial the proof of transportation failed as to counts 2 and 5, resulting in the necessity of finding the defendant not guilty upon these counts irrespective of the decision upon the other issues in the case. In the first instance it was attempted to reach the main issue in the case upon a motion to dismiss but it seemed to the Court an inappropriate way of presenting the case for final determination and with the approval of counsel the motion to dismiss was overruled and the matter being one principally of law, the parties by written stipulation waived a jury and consented to try the case to the Court.

The evidence of the plaintiff is rather meager in regard to the operation of the alleged unlawful device but the defendant desiring to have the case decided upon the merits put in his defense, which included an explanation of the alleged gambling device and introduced in evidence a specimen in three parts, marked respectively Exhibits "A", "A-1" and "A-2", and companion device marked Exhibits "B" and "B-1". The principal purpose of the additional Exhibits "B" and "B–1" was to illustrate the difference between them and the "A" exhibits, which were under attack inasmuch as the "B" exhibit machines had been passed by the Department as not being in violation of the Act.

Inasmuch as the defendant by his testimony admitted that he was the inventor and owner of the machines and that he had shipped in interstate transportation a quantity of the machines introduced as "A" exhibits, the only remaining question to be determined by the Court was whether or not the machine exemplified as the "A" exhibits came within the definition set forth in Section 1171 above quoted. It may be said in passing that the defendant produced and introduced in evidence a patent for the machine in question from the United States Patent Office.

No attempt will be made to supply in detail or technical fashion a description of the article here in controversy as it would not be within the technical knowledge of this Court so to do. A general outline of how it appeared to a mind unskilled in inventive genius saw it in physical outlines as a structure similar to the ordinary and well known "slot machine". It is equipped with a false row of slots at the top, which have no connection with the operation of the machine, and a representation of a pay-off receptacle below, which is closed and has no operational connection with the machine proper. In other words, it is a machine not operated by or with pay-off in coins. There is a handle which when released, as subsequently described, will start circulating a drum with the ordinary insignia of slot machines thereon, representing different kinds of fruit or bells, etc. Above the revolving drum appears the name of the machine, "Joker", and indicating below the inscription "for amusement only". On the front of the main device is placed a card describing the combinations which will win and the figures opposite which will be the reward of the different combinations. When the handle is pulled down the drum will revolve with the insignia thereon and continue as long as its operation is permitted through a controlling device. In itself the device, which is attempted to be described, is inoperative. It is, however, connected with what appears to be a control device separate and distinct, one from the other, except by an electrical connection. The control device has switches which makes it possible to start the operation of the main portion of the device. When the proper connection is made the handle upon the principal device is released and upon which action the drum will revolve for as many times as the paid price will provide, until a so-called pay-off comes, which is reflected in numbers electrically shown on the face of the control device and according to the testimony of the defendant and inventor this indicates that the operator will then have as many additional chances at the hand lever as is indicated by the figure on the face of the control device. According to the testimony of the defendant this is the only reward to the operator and it is explained that it is practically the same as the system represented by the ordinary "pinball" machine, except that the pinball machine is operated by a coin inserted therein. However, the reward in each is only additional chances to pull the handle or knob. It was testified by the defendant and inventor that the drum with the insignia thereon has no mechanical connection with the principal machine, which pays or fails to pay, using those terms in their larger sense, and to demonstrate this he removed the drum with the insignia thereon and inserted another without the insignia, in which the machine operated identically and indicated on the control device in figures the additional number of plays granted to the operator.

The Court apologizes for this crude description and lack of ability to adequately describe a device of the character here involved, but from the foregoing it is apparent that while the device may be capable of use for gambling purposes, like the ordinary deck of cards can be so used, yet in itself is not a gambling device which, under the statute, will reward a player as the result of the application of an element of chance with any "money or property".

The argument therefore centered itself largely upon the definition, meaning and scope of the word "essential" as found in the Act. The contention is made by the defendant that actually and under demonstration the particular drum or reel with insignia was no essential part of the device in that it was capable of operation without such a drum or reel with insignia thereon. The plaintiff contends—being virtually forced to the position—that the drum or reel with the insignia is an essential part of the device because it is the factor which attracts the public or players to play the machine, for the reason

theoretically that the player or operator is principally concerned in watching the wheel revolve with the insignia thereon. This seemingly carries us into the realm of the psychological. As a practical observation of slot machine "addicts", the chief attraction seems to have been the jingle of the coins in the receiving cup. This Court cannot feel that the meaning of the word "essential" should include such a far-fetched scope as suggested by plaintiff's counsel. The definition of the leading dictionaries would indicate that its common meaning would be that it is something necessary to the operation of the machine itself, in which respect the demonstration indicates that it is not. The history of the legislation indicates that it was within the mind of Congress not to penalize or restrict innocent playing machines which would not pay off in money or property. It must be said that the theory of the government as to the meaning of the word "essential" in the Act is at least too tenuous upon which to base a judgment in a criminal case. This was attempted to be demonstrated by defendant with the "B" exhibits, which were operated the same as in the "A" exhibits, but instead of a drum or reel with insignia thereon, when the pay-off came a light would flash showing the winning combination and which latter had been passed by the authorities as a device not within the scope of the section defining a gambling device. When we get to the point of resolving the so-called attractiveness of involving reels with insignia and the same insignia being flashed upon an illuminated screen or glass, we seem to be in the realm of pure psychological speculation.

Accordingly it must be held that the device for which the defendant failed to register as a manufacturer or dealer and the transportation thereof is not one within the prohibitive scope of the statute and that there was no violation of that Act by the defendant, which must result in a judgment by the Court of not guilty on all counts. A judgment will be entered accordingly, discharging the defendant and his bondsmen.