**UNITED STATES of America**

v.

**Robert J. ANSANI, Harvey Milner, John Edward Moore, alias Claude Maddox, alias John Manning, Joseph J. Aiuppa, and Ray Johnson, co-partners doing business as Taylor & Company.**

**No. 54 CR 556.**

United States District Court
N. D. Illinois, E. D.

Jan. 26, 1956.

See also 138 F.Supp. 451.

Robert Tieken, U. S. Dist. Atty., by Raymond C. Muller, Asst. U. S. Atty., for the U. S.

George F. Callaghan, Chicago, Ill., for defendants Moore and Aiuppa.

Samuel S. Brown, Chicago, Ill., for defendants Ansani, Milner and Johnson.

CAMPBELL, District Judge.

### Memorandum and Verdict

The defendants are under a four count indictment charging them with violations of the Gambling Devices Transportation Act, 15 U.S.C.A. § 1171 et seq. Count II has been dismissed since the provision of the statute upon which it is based has been held by this Court to be unconstitutional. A trial upon the remaining three counts was had before the Court without a jury and the case was then taken under advisement on briefs, including the additional brief filed only last evening by the defendants.

Count I alleges that on February 26, 1954, the defendants unlawfully, knowingly and wilfully shipped and caused to be transported in interstate commerce four gambling devices which were intended to be used in connection with so-called slot machines. These alleged gambling devices, known also as Trade Boosters, are alleged to have been shipped to one, Frank J. Zaydell, Williamsport, Pennsylvania.

Count III charges that on July 1, 1954, the defendants wilfully, knowingly and unlawfully failed and refused to register, with the Attorney General of the United States or the United States Attorney for the Northern District of Illinois, as dealers in gambling devices.

Count IV alleges that the defendants wilfully, knowingly and unlawfully shipped gambling devices in interstate commerce without marking their containers so as to clearly indicate that the contents thereof were gambling devices.

At the outset, the Court must determine whether a Trade Booster is a gambling device within the purview of the Act.

Section 1171(a) of the Act defines a "gambling device" as

"(1) any so-called 'slot machine' or any other machine or mechanical device an essential part of which is a drum or reel with insignia thereon, * * * by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property; or * * * (3) any subassembly or essential part intended to be used in connection with any such machine or mechanical device."

The defendants contend that a Trade Booster is not a subassembly or essential part of a slot machine. They argue that once a Trade Booster has been installed, a slot machine ceases to be such since before a Trade Booster can be connected to a slot machine, the machine would first have to be deslotted; that is, the coin intake, coin chutes and pay-out mechanism would have to be removed. Having no slots, the defendants reason, a slot machine is not a slot machine when the Trade Booster has been connected to it; therefore, the defendants argue, a Trade Booster could not be con-

sidered a subassembly or essential part of a slot machine.

The difficulty with the defendants' position is that the statute is concerned with slot machines, not because they have slots but because they are machines the operation of which might entitle a person to receive, as the result of the application of an element of chance, a reward in money or property. The defendants would have this Court hold that the term "slot machine," as contained in the Act, means any gambling device which contains slots for the purpose of receiving and delivering coins. This definition, however, I am unable to accept.

An object is that which it is in objective reality. If, in placing a label or name on that object by which it later will be known, a word or term is chosen that describes that object's accidental qualities, rather than those qualities that the object has of its very essence, then that object does not cease to be that which it is in objective reality merely because those accidental qualities are later removed. The label or name by which that object is known succeeds, by common usage, to mean that which it is in objective reality. Thus, in naming that which was to be known as a "slot machine," the word "slot" was joined with the word "machine." The word "slot" describes an accidental quality of that which is now known as a "slot machine" and does not describe that which a slot machine has of its very essence. It makes little difference, therefore, whether a slot machine has been deslotted or not as that machine continues to be a slot machine, altered or not.

■ Thus, a "slot machine" has, by common usage, become to be known as any device which employs drums or reels with the familiar insignia thereon which, when activated either mechanically or electrically after the payment of the required consideration, might entitle a person, by the application of an element of chance, to winnings payable in money or property. A slot machine remains such whether the required consideration for the operation of the machine is in-

serted into the machine or whether it is paid over the counter to the owner of the premises or his employees. Similarly, a slot machine remains such whether the winnings are delivered automatically or whether they are paid over the counter.

This definition of a slot machine is substantiated by the Act's legislative history, which will be found in 1950 United States Code Congressional Service, page 4240, wherein it is stated, at page 4246, that slot machines are machines that:

> " * * * commonly employ drums or reels with insignia thereon which are activated either mechanically or in some other manner, as, for example, by electric power. Slot machines, as defined herein, come within the definition of a gambling device whether or not they are equipped mechanically to deliver any money or property. If they are not equipped to deliver money or property mechanically, the winnings, if any, indicated on the machine, are usually paid over the counter by the owner of the premises on which such machines are operated, or his employees."

■ Common usage, and the Act's legislative history, therefore, prohibit the definition of slot machines that the defendants urge this Court to accept. I hold, therefore, that a slot machine continues to be such after it has been deslotted and connected with a Trade Booster.

It must now be determined whether a Trade Booster is a subassembly or essential part of a slot machine as that machine exists in its altered state.

The function of a Trade Booster is to permit the operation of a slot machine by remote control. The Trade Booster performs precisely the same function as the coin slots previously performed in the unaltered slot machine. To the extent, therefore, that coin slots were essential to the operation of an unaltered slot machine, the Trade Booster is essential to its operation in its altered or

**458**

deslotted state. The evidence in this case reveals that without a Trade Booster the altered slot machine cannot be operated on a practical basis.

Viewing an altered slot machine (Government's Exhibit 3) and a Trade Booster (Government's Exhibit 4) as one complete assembly, which it becomes when these two exhibits are connected, I find that thus assembled, a Trade Booster becomes a subassembly of an altered slot machine. This is so because the mere altered device, prior to the connection of the Trade Booster, is an unworkable device on a practical basis.

I hold, therefore, that a Trade Booster is a subassembly and essential part of the gambling device to which it is attached and that it itself is a gambling device within the purview of Title 15 of the United States Code Annotated, § 1171(a) (3). See the case of United States v. Three (3) Trade Boosters, D. C., 135 F.Supp. 24, decided on October 18, 1955. I find the case cited by the defendants, United States v. McManus, D. C.Wyo., 138 F.Supp. 164, to be unconvincing and unpersuasive.

The defendants argue that a slot machine is not a gambling device, but an amusement device, once it is attached to a Trade Booster. The short answer to this contention is that a person plays a slot machine for the same reason that he does any other gambling device, and that is, to win a prize in money or property. There is nothing amusing about merely playing a slot machine in order to see what insignia comes up on the reels. Whatever amusement is involved is derived from the expectation of "hitting the jackpot" and the possibility of winning the jackpot makes a slot machine, altered or unaltered, a gambling device. Indeed, few people would play a slot machine if they knew that, win or lose, there would be no winnings. Furthermore, the legislative history of the instant Act clearly reveals that a slot machine equipped with a Trade Booster is a gambling device and not an amusement mechanism. The defendants run squarely into the legal maxim that one cannot do indirectly that which he is forbidden to do directly.

The defendants next contend that a Trade Booster can be used in connection with several nongambling devices and that consequently the Government has not proved that the Trade Booster was manufactured or sold for the purpose of being used in connection with a gambling device. This argument is untenable for several reasons. First of all, Taylor & Company's Service Instructions for the Trade Booster (Government's Exhibit 1) and Taylor & Company's advertising (Government's Exhibit 2) clearly refute this contention. The Service Instructions teach the connection of the Trade Booster to a slot machine. No other machine is illustrated in this book except the familiar slot machine. Government's Exhibit 2 is a copy of Taylor & Company's advertising appearing in the April 3, 1954, issue of the trade publication, "The Billboard." In this advertisement, the Trade Booster is illustrated in conjunction with a slot machine. These two devices are shown in a "before" and "after" sequence.

Secondly, Government's witness Glenville, a special agent of the F.B.I., testified that when he visited Taylor & Company on July 20, 1954, he was shown, by the defendant Ansani, two slot machines that had been connected to Trade Boosters.

Finally, defendants' witness Schuyler, when examined on cross examination, completely broke down when he was asked pertinent questions concerning the other uses to which a Trade Booster might be put. Schuyler's testimony proved, in my opinion, that as a practical matter, a Trade Booster, as that device appeared in Government's Exhibit 3, could not be beneficially connected with any machine other than a slot machine. I hold, therefore, that a Trade Booster is a device designed, manufactured and sold to be used in connection with a slot machine.

Having thus determined these preliminary issues, I shall now consider whether the Government has proved its case as to each defendant as charged in each count.

### Count I.

As has been indicated, this count pertains to the charge that the defendants shipped four gambling devices in interstate commerce. The witness Glenville testified that when he visited the premises of Taylor & Company on July 20, 1954, the defendant Ansani admitted that he shipped four Trade Boosters to a Mr. Zaydell of Williamsport, Pennsylvania. Glenville testified that Ansani admitted shipping by Railway Express, on February 26, 1954, four Trade Boosters bearing the numbers 114, 214, 223, and 303. Glenville identified Government's Exhibit 4 as the Trade Booster bearing the serial number 223.

Mr. Zaydell, the man to whom the shipment was allegedly sent, testified that he received a shipment containing Trade Boosters 211, 223, and 303, plus three other unidentified Trade Boosters, in February to April of 1954.

An invoice of Taylor & Company, Government's Exhibit 11, was admitted into evidence without objection. This invoice reflects the fact that four Trade Boosters, numbered 146, 211, 223 and 303, were sold to a "Frank Zadell" of Williamsport, Pennsylvania, on February 25, 1954. This invoice carried the inscription that terms were "c. o. d." and that the Trade Boosters were shipped via "Railway Express."

In the light of this evidence, counsel for the defendant Ansani contends that no evidence independent of Ansani's admission was adduced as to Count I. Counsel argues that proof of the corpus delicti must support an admission of a defendant and that the Government in this case has failed "to prove this essential element beyond all reasonable doubt."

It is, of course, true that a defendant's oral admissions cannot be considered against him unless it is supported by independent proof of the corpus

delicti. Citing the case of United States v. Echeles, decided by the Court of Appeals of this Circuit, and reported at 222 F.2d 144. However, the corpus delicti need not, as counsel suggests, be proved beyond all reasonable doubt. Citing the case of Forte v. United States, decided by the Court of Appeals of the District of Columbia, 68 App.D.C. 111, 94 F.2d 236, 127 A.L.R. 1120. It is sufficient if there is substantial evidence of the corpus delicti and this proof, together with proof of the admission, must amount to proof beyond a reasonable doubt of the commission of the crime and of the defendant's connection with it.

The phrase, "corpus delicti," includes "first, the fact of an injury or a loss and secondly, the fact of somebody's criminality (in contrast e. g. to accident) as the cause of the injury or loss." So says our Court of Appeals in United States v. Echeles, 222 F.2d at page 155. "The proof of these two elements", the Court of Appeals for this circuit continues, "involves the commission of a crime by somebody. But the phrase 'corpus delicti' does not include the fact of the connection of the accused with the crime— his identity as the criminal, or the guilty agent through whom the wrong has occurred." This is found at pages 155 and 156 of the opinion just cited.

Thus defined and considered, the Government has proved the corpus delicti of the instant crime through the testimony of the witness Zaydell and through the admission into evidence of Government's Exhibit 11. The corpus delicti of the crime alleged in Count I is the interstate shipment by someone of gambling devices as defined by law. Zaydell testified that he received a shipment of Trade Boosters containing Boosters 211, 223 and 303 during the period from February to April, 1954. Government's Exhibit 11 reflects that these Trade Boosters were sold to Zaydell on February 25, 1954, and that they were shipped to him via Railway Express. This evidence amounts to substantial evidence of the corpus delicti of the crime alleged in Count I and, when considered together.

**460**

with Ansani's admission to agent Glenville, amounts to proof beyond all reasonable doubt of Ansani's guilt of the crime therein alleged.

 Accordingly, I find the defendant Ansani guilty as to Count I of the instant indictment.

Concerning the remaining defendants, there are no admissions that they either sent or knew about the illegal shipment alleged. The indictment charges that the defendants knowingly and wilfully shipped and caused gambling devices to be transported in interstate commerce.

As to the defendant Milner, proof as to his being guilty of Count I is limited to his admission to the witness McGuire that he was a partner in Taylor & Company. This admission was corroborated by Taylor & Company's partnership income return for 1954 and Milner's individual income return for that year. (Government's Exhibits 5C and 6D.) These exhibits reflect that Milner was a partner in Taylor & Company for 1954.

Concerning the defendant Johnson, proof as to his being guilty of Count I is limited to his admission to McGuire that he was a partner in Taylor & Company in 1954. This admission is substantiated by Government's Exhibit 5C.

Concerning the remaining two defendants, Aiuppa and Moore, proof as to them is limited to their partnership and individual income tax returns for the year 1954. (Government's Exhibits 5C, 6A and 6C.) These returns reflect that these defendants were partners in Taylor & Company for the year 1954.

In summation, therefore, proof as to all of the defendants, except Ansani, is limited to the proof that they were partners in Taylor & Company when the offense alleged in Count I was committed.

 It is well settled law that a partner, although liable for his partner's torts committed in the course of the partnership's business, is not liable for the criminal acts of a co-partner unless he possesses guilty knowledge of the criminal act of his co-partner or is an accessory thereto either before or after the

fact. I cite the cases of Sleight v. United States, in the District of Columbia Circuit, and reported at 65 App.D.C. 203, 82 F.2d 459; the case of United States v. Ward, in the third circuit, 168 F.2d 226.

In the instant case, there is no evidence that the defendants Milner, Johnson, Aiuppa and Moore knew of Ansani's illegal interstate shipment of gambling devices. Nor is it shown that these defendants were accessories before or after the crime. The indictment charges that these defendants "knowingly" and "wilfully" shipped and caused gambling devices to be transported in interstate commerce. I hold that the Government has failed to prove that these four defendants "knowingly" and "wilfully" shipped or caused gambling devices to be transported in interstate commerce.

 It may well be that Ansani took on the interstate aspect of the dealership on his own or it may well be that the others knew of and condoned Ansani's action. However, it is incumbent upon the Government to prove beyond a reasonable doubt that these four defendants are guilty as charged. This, the Government has failed to do.

Accordingly, I find the defendants Milner, Johnson, Aiuppa and Moore not guilty as to Count I.

## Count III.

This count charges that the defendants failed to register as dealers in gambling devices in violation of Section 1173, Title 15, United States Code Annotated.

To support this charge, the Government introduced into evidence Government's Exhibits 9 and 10. Exhibit 9 is a certificate of the Records Administration Officer of the United States Department of Justice. This document states that this officer is the custodian of the records filed with the Attorney General and that a diligent search has uncovered "no registration, or monthly inventory or record of sales and deliveries of gambling devices" filed on behalf of Taylor & Company or the several named defendants herein. Government's Exhibit 10

is similar to Exhibit 9 except that this exhibit reflects that the defendants have not registered with the United States Attorney at Chicago, Illinois.

The defendants first contend that these certificates do not support the allegations of Count III. This count charges that the defendants "as dealers in gambling devices * * * failed to register with the Attorney General their names or trade names and the addresses of their principal place of business in the Northern District of Illinois." These certificates clearly support the allegations contained in Count III and conclusively prove that these defendants have not registered. If the defendants contend that they had registered then it became incumbent upon them to prove that they had, in fact, registered. These certificates, in absence of any proof to the contrary, prove beyond a reasonable doubt that the defendants did not register as dealers in gambling devices.

The defendants next contend that the Government has failed to prove that these defendants are dealers in gambling devices. They argue that one transaction does not establish one as a "dealer." This reasoning, however, is clearly untenable, in my opinion. One is a "dealer" in a commodity if he has so geared his affairs that he can, upon reasonable notice, deliver that commodity once a sale has been made. That is, the potential to make sales in a given commodity, rather than the actual sales themselves, makes one a dealer in that commodity. The potential exists if the dealer has a sufficient quantity of the particular commodity available for his disposal coupled with the necessary facilities with which that commodity might be distributed.

In the instant case, it has been proved that Taylor & Company bought its Trade Boosters from the H. C. Evans Co. Taylor & Company's advertising (Government's Exhibit 2) clearly reveals that that Company held itself out to be a distributor or dealer in Trade Boosters. To the same effect is Taylor & Company's Instruction Booklet and Parts Catalogue. (Government's Exhibit 1.) Agent Glen-

ville's testimony reveals that Taylor & Company's place of business was such as to indicate that it was equipped to distribute gambling devices. The proof is complete with the evidence that the several named defendants were partners in Taylor & Company during the time in question. This was proved by the admissions of the defendants Ansani, Milner and Johnson, and by the admission into evidence of the defendants' partnership and individual income tax returns for the years 1952, '53, and '54.

The defendants' final argument against the proof as to Count III is that Rule 27 of the Federal Criminal Rules, 18 U.S.C.A., and Rule 44 of the Federal Rules of Civil Procedure, 28 U.S.C.A., to which it refers require that the certificate and attestation contained in Government's Exhibits 9 and 10 must be by "the officer having legal custody of the record, or by his deputy." The defendants conclude that this was not done in this case because it was necessary for either the Attorney General or the Deputy Attorney General to make the attestation as to Government's Exhibit 9.

The short answer to this contention is that Rule 44 contemplates that the officer having immediate custody of the records must make the attestation. Furthermore, the word "deputy," as contained in this rule, clearly means the duly appointed representative of the Attorney General, in this case. In either case, the attestation by the Records Administration Officer of the United States Department of Justice clearly satisfies the requirements of Rule 44 of the Federal Rules of Civil Procedure, and therefore also of Rule 27 of the Federal Rules of Criminal Procedure.

Accordingly, I find each and all of the defendants guilty as charged in Count III.

Count IV.

This count concerns the charge that the shipment alleged in Count I was not marked so as to clearly indicate that the packages contained gambling devices. It is alleged that this was done wilfully and

knowingly. At the outset, the same reasoning that found the defendants Milner, Johnson, Moore and Aiuppa not guilty in Count I finds the same defendants not guilty as to Count IV. There are, however, other reasons which compel a finding of not guilty as to all defendants.

■ The Government's proof as to Count IV consists entirely as to the admission by Ansani that the packages which contained the Trade Boosters in question were labeled "Electrical Equipment." There is no independent evidence as to how, in fact, these packages were or were not labeled. As has been said before, there must be independent proof of the *corpus delicti* in addition to a defendant's admission, citing again United States v. Echeles. The *corpus delicti* of the crime alleged in Count IV consists of proof that someone transported gambling devices in interstate commerce without marking their packages so as to clearly indicate that gambling devices were contained therein. As to Count IV, I find, therefore, that there is no evidence to support the *corpus delicti* of the crime alleged.

Accordingly, I find each defendant not guilty as to Count IV.

Counsel for the defendants cite other, in my opinion, comparatively minor points in a further attack on the entire indictment. Suffice it to say, I have considered their arguments in respect thereto and find them to be without merit.

Accordingly, I find:

1) The defendant Ansani guilty as charged in Counts I and III and not guilty as to Count IV.

2) The defendant Milner guilty as charged in Count III and not guilty as to Counts I and IV.

3) The defendant Moore guilty as charged in Count III, and not guilty as to Counts I and IV.

4) The defendant Aiuppa guilty as charged in Count III, and not guilty as to Counts I and IV.

5) The defendant Johnson guilty as charged in Count III, and not guilty as to Counts I and IV.