**UNITED STATES of America,**
**Libelant,**

v.

**FIVE GAMBLING DEVICES, alias "Circus" Machines, Al Cross and Harold Brown, d/b/a United Distributing Company, Respondents.**

**No. 1485–D.**

United States District Court
E. D. Illinois.
July 3, 1957.

Charles R. Young, Asst. U. S. Atty., Danville, Ill., for libelant.

Edward G. Krantz, Chicago, Ill., and Foreman, Meachum & Clapper, Danville, Ill., for respondents.

PLATT, Chief Judge.

The United States, libelant in this libel action, seeks to condemn and have forfeited five machines as "gambling device[s]" which were allegedly transported in interstate commerce in violation of the Johnson Act, 15 U.S.C.A. § 1172.

The respondents stipulated that the machines in controversy were transported in interstate commerce. The only remaining question presented by the briefs of both libelant and respondents is the issue as to whether the machines are "gambling device[s]" within the

meaning of Title 15, § 1171, U.S.C. which reads as follows:

"(a) The term 'gambling device' means—

"(1) any so-called 'slot machine' or any other machine or mechanical device an essential part of which is a drum or reel with insignia thereon, and (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (B) by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property; or

"(2) any machine or mechanical device designed and manufactured to operate by means of insertion of a coin, token, or similar object and designed and manufactured so that when operated it may deliver, as the result of the application of an element of chance, any money or property; * * *"

The five accused machines and a mechanical slot machine, commonly known as a "one armed bandit", were all in evidence. The mechanism of the machines was operated in court. The devices in question are called "circus" machines and consist of wooden cabinets about 27½ inches high, with a sloping front glass panel. The machines are marked for amusement only, contain no pay-out tubes, and operate electrically. The machine is started by the turn of a knob which results in an electrical contact. There is no "feel" in the knob and its position does not affect the operation of the machine after electric contact has been made. Once the play is started the player has no control over the device.

The upper portion of the glass panel contains a score count register, a coin slot (except for two of the machines that are operated by remote control), and a display of winning combinations of circus animals with the number of replays for each winning combination. The score count indicator adds and subtracts the number of plays. The re-mainder of the glass panel contains five horizontal rows of animals, each row consisting of three columns; each column contains the figure of a different animal. When play is started lights flicker behind the figures of the various animals, finally stopping and illuminating one figure in each column. If the illuminated figures form a winning combination additional games for replay are scored on the count register. The machines are set with the odds heavily against the player to obtain the winning combinations.

The lights are controlled by disc-type rotary switches which are propelled by an electric motor with a reducing gear box which results in a motor speed of 11 or 12 revolutions per minute. The motor turns a shaft upon which three rotary discs are located. As each disc rotates contact is made with numerous buttons which are connected to individual bulbs. Each time a disc contacts a button a particular animal is illuminated. Each disc ceases its rotation about one second apart, illuminating first an animal in the left-hand column, then an animal in the center column, and finally an animal in the right-hand column. The final combination of illuminated figures determines whether the player has won or lost.

At the trial the government introduced expert testimony to the effect that the disc-type rotary switches propelled by a motor with the insignia on the glass panel of the "circus" machines are identical in operation and purpose to the reels and drums of mechanical slot machines.

Respondents presented evidence to prove that "circus" machines contain no reel or drum with insignia thereon; contain no pay-out tubes; and that the mechanism in the "circus" machine is similar to the mechanism in pinball machines.

Considering all of the evidence it must be concluded that there is some skill in the operation of a pinball machine. The operator may control the force of the ball in the play area by the distance that

the plunger is pulled back. Instead of a flickering of various animals the operator can see the ball as it traverses the field to accumulate points. The operator also has the opportunity to shoot the ball onto the field again. However, in the "circus" machines and in the "slot machines" the player has no control whatsoever over the resulting winning combinations. The respondents have cited Washington Coin Mach. Ass'n v. Callahan, 1944, 79 U.S.App.D.C. 41, 142 F.2d 97, which held that pinball machines do not come within the purview of the Johnson Act. Since the "circus" machines cannot be classified as pinball machines, this case is not material here.

Whether the "circus" machines fall within the statutory ban must be determined by the language of the statute quoted above, as well as the underlying intent thereof. In U. S. Code Congressional Service, Vol. 2, 81st Congress, 2d Sess. 1950, at the hearings on the legislation which gave the history and the purpose of the legislation the following statement is found on page 4243:

"Those favoring enactment of the bill argued that Federal legislation was required to assist State and local law-enforcement officers in the enforcement of State and local anti-gambling statutes. They pointed, particularly, to the existence of Nation-wide crime syndicates which are securing a large share of their revenue from the operation of slot machines and other gambling machines."

Again at page 4240 in the same volume, the purpose of the legislation is stated:

"The primary purpose of this legislation is to support the policy of those States which outlaw slot machines and similar gambling devices, by prohibiting use of the channels of interstate or foreign commerce for the shipment of such machines or devices into such States."

Finally, an explanation of Section 1171 is given on page 4246:

"Paragraph (1) of the definition deals with machines and mechanical devices commonly known as slot machines. Slot machines commonly employ drums or reels with insignia thereon which are activated either mechanically or in some other manner, as, for example, by electric power. Slot machines, as defined herein, come within the definition of a gambling device whether or not they are equipped mechanically to deliver any money or property. If they are not equipped to deliver money or property mechanically, the winnings, if any, indicated on the machine are usually paid over the counter by the owner of the premises on which such slot machines are operated, or his employees."

Thus, it is clear that Congress was attempting to prevent the transportation in interstate commerce of so-called slot machines and similar gambling devices. From the explanation of the definition it is obvious that it makes no difference whether the machines were operated mechanically or electrically, nor whether they contain pay-out tubes or not. Therefore, this court rejects the reasoning in United States v. McManus, D.C.D. Wyo.1952, 138 F.Supp. 164 cited by respondents, wherein it was held, in part, that because the devices there in question rewarded the players with free plays and not money or property they were not within the purview of the Act.

It is true that two of these machines do not have slots for the depositing of coins and are operated by remote control. This in itself is not sufficient to remove them from the effect of the statute. In United States v. Ansani, D.C.N. D.Ill.1956, 138 F.Supp. 454, 457, affirmed 7 Cir., 1957, 240 F.2d 216, 221, it was held that a slot machine equipped with a "trade booster", a device attached to the slot machine making the machine operable by remote control instead of by insertion of coins was a "gambling device", and that the "trade booster" was a subassembly or essential part intended to be used in connection with any such machine or mechanical device. The payout tubes as well as the coin slot had

been removed from the machine. Judge ·Campbell stated that: "It makes little difference * * * whether a slot machine has been deslotted or not as that machine continues to be a slot machine, altered or not." Furthermore: "A slot machine remains such whether the required consideration for the operation of the machine is inserted into the machine or whether it is paid over the counter to the owner of the premises or his employees. Similarly, a slot machine remains such whether the winnings are delivered automatically or whether they are paid over the counter." The Court of Appeals added that "Section 1171 does not require that a slot machine be a coin activated device nor that winnings be delivered automatically." [240 F.2d 220.]

The "circus" machines in accordance with the Ansani case and the legislative history are therefore no less slot machines because they are electrically operated, have no coin slot, and have no payout tubes.

■ The "circus" machines must fall within the prohibition of the statute. They have discs which are mounted on a shaft. The left disc stops first, then the middle disc, and then the disc on the right, like the reels on the slot machine in evidence. Instead of rotating drums on which appear the familiar fruit and bell insignia the rotating discs in the "circus" machines make electrical contacts as they revolve illuminating the animals that are printed on the glass panel. In principle, the operation of the "circus" machine and the "one armed bandit" are identical. Both machines are dependent entirely upon an element of chance. The "circus" machines give the same appearance, result and invitation to play with the owner of the machine sure to win. Although the "circus" machine registers the net games won it *may* by its operation entitle a person to money or property. To hold that the Act can be avoided by mere subterfuge embodied in the mechanism of these "circus" machines, which do contain reels but use a band or wiper to make electrical contacts to illuminate the various animals instead of drums on the reels, would be to heed pretense at the expense of reality and would emasculate the intent of Congress and defeat the very purpose of the Act. As was said by Mr. Justice Sutherland in Gregory v. Helvering, 1935, 293 U.S. 465, 470, 55 S.Ct. 266, 268, 79 L.Ed. 596:

> "To hold otherwise would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose."

It must be concluded that the "circus" machine is within "[t]he term 'gambling device'" and is either a "so-called 'slot machine' or * * * mechanical device an essential part of which is a drum or reel with insignia thereon, and * * * (B) by the operation of which a person may become entitled to receive * * * any money or property."

Respondents give import to United States v. One Electronic Pointmaker, D.C.N.D.Ind.1957, 149 F.Supp. 427, where a strict construction of the statute was adopted. The court there found that the machine in question, which was electrically operated, was not within the meaning of the Act for the reason that the machine did not contain reels or drums with insignia thereon. The court there placed reliance upon the reasoning in the case of United States v. Korpan, 7 Cir., 1956, 237 F.2d 676. This decision of the Court of Appeals for the Seventh Circuit was subsequently reversed by the United States Supreme Court on June 17, 1957. Moreover, that case involved an interpretation of Section 4462(a) of the Internal Revenue Code, Title 26, U.S.C. and not § 1171 of the Johnson Act. In One Electronic Pointmaker the district court held that to hold the machine within the scope of the Act would require the court to legislate. However, this court is of the opinion that interpreting the language of the statute and giving effect to its purpose is not legislating.

■ This court is aware of the canon of statutory construction that demands that penal statutes are to be strictly con-

strued. At the same time, this is not such a rule which may be used in a manner that will result in the overriding of the congressional intent to prohibit from interstate commerce "slot machines and similar gambling devices." If a court were to hold the "circus" machines to be outside the Act it would in fact be legislating by eviscerating the Act. Common sense demands that these machines are slot machines within the Johnson Act. This court will not adopt a strained or highly technical construction to defeat the purpose of the Act. The "circus" machines were motivated as an attempt to avoid the statute, come clearly within the purpose of the Act, and could readily lend a source of revenue to those who attempt to operate outside the law. The machines should be forfeited.

Findings of fact, conclusions of law, and proper order may be submitted in accordance with the views expressed herein.