**UNITED STATES**

**v.**

**5 GAMBLING DEVICES et al.**

**Civ. A. No. 4325.**

United States District Court
N. D. Georgia, Atlanta Division.

Dec. 22, 1952.

U. S. Atty., for plaintiff.

Carter Goode and Ellis M. Creel, Atlanta, Ga., for defendant.

SLOAN, District Judge.

The United States filed a libel of information against five slot machine gambling devices under Title 15 U.S.C.A. § 1171 et seq., contending:

That Martin Music Company, Inc., and A. J. Lovelady, Robert L. Moody and Henry G. Tanner were during the year 1951 dealers who did not register with the Attorney General and who did not file inventories and records of sales and deliveries as required by the Act. That such named dealers sold and delivered the described gambling devices to the American Legion, Harold Douglas Maloney Post No. 252, Inc., while they were not registered as dealers in violation of Section 1173, Title 15 U.S.C.A. That such devices were seized by the United States and are now in the custody of the United States Marshal for the Northern District of Georgia. The United States prays for a judgment of forfeiture.

The American Legion, Harold Douglas Maloney Post No. 252, Inc., makes response and contends:

That the machines were illegally seized in violation of its rights under the Fourth Amendment to the Constitution of the United States, in that no search warrant was issued and that libellee did not consent to such seizure.

Libellee denies that the named corporation and individuals were dealers within the meaning of the Act, and contend that since January 2, 1951 that they have not engaged in any interstate transaction and that the provisions of the law do not apply to them. That Section 1173 of Title 15 U.S.C.A. is void for vagueness in that the meaning of phrase "in such district" can not be ascertained; that the Act applies only to dealers who become such after the passage of the Act and not to dealers already in business at the time of the passage of the Act. That Section 1173 is void as being a usurpation of the police powers of the States and beyond the regulatory power of Congress under the Constitution.

### Findings of Fact.

Martin Music Company, a corporation, engaged in the business of operating music machines and other coin operated machines and owned the five gambling devices here involved and operated them

on a rental basis for some months and then sold them to the claimant, American Legion, Harold Douglas Maloney Post No. 252, Inc., of Gwinnett County, Georgia, on October 31, 1951. This was the only sale of gambling devices ever made by Martin Music Company and they were never engaged in the business of buying and selling gambling devices.

In the seizure of the gambling devices here involved the Special Agents of the Federal Bureau of Investigation were not acting under authority of a search warrant.

The above described slot machines have at all times since the effective date of Public Law 906, 81st Congress, been located within the State of Georgia.

The above described slot machines were sold to American Legion, Harold Douglas Maloney Post No. 252, Inc., by Martin Music Co., a corporation, on October 31, 1951.

When the Special Agents of the Federal Bureau of Investigation went to seize the gambling devices here involved, they found the Adjutant of the Legion Post working at the postoffice and contacted him there and he went with the agents and voluntarily surrendered the machines. The devices seized were gambling devices contraband under state law, acquired after passage of the Act, from a corporation not registered as a dealer, and there was probable cause for the seizure.

Although Martin Music Company did on November 2, 1951 register as a dealer under the Act, Martin Music Company was a user and never a dealer in gambling devices and the transaction of the sale of the devices here involved to the claimant was purely an intrastate transaction.

Conclusions of Law.

The Act of January 2, 1951, Title 15, U.S.C.A. § 1171 et seq., prohibiting the transportation of gambling devices in interstate commerce, was passed pursuant to the constitutional power of Congress to regulate interstate commerce, and being penal in character, must be strictly construed.

It is an elementary rule of construction that an interpretation of an Act which would make it unconstitutional will not be adopted unless imperatively required by the wording of the Act or the context of the Act as a whole.

One of the questions to be determined here is whether the Act applies to purely intrastate transactions.

Congress plainly has the power to prohibit or regulate the interstate movement of gambling devices and it possesses every power needed to make that prohibition or regulation effective— the commerce power is not confined in its exercise to the regulation of commerce among the states. It extends to those activities intrastate which so affect interstate commerce or the exercise of the power of Congress over it as to make the regulation of them appropriate means to the attainment of a legitimate end, the effective execution of the granted power to regulate interstate commerce.

No form of state activity can constitutionally thwart the regulatory power granted by the commerce clause to Congress. Hence, the reach of that power extends to those intrastate activities which in a substantial way interfere with or obstruct the exercise of the granted power [1].

It is neither shown nor contended that purely intrastate transactions in gambling devices in any way interfere with or obstruct the regulation of such devices in interstate commerce, and to extend the Act to purely intrastate transactions gives to the Act an effect beyond the constitutional power of Congress. The Act does not apply to intrastate transactions [2].

1. U. S. v. Wrightwood Dairy Co., 315 U. S. 110, 119, 62 S.Ct. 523, 86 L.Ed. 726.

2. Smith v. McGrath, D.C., 103 F.Supp. 286; U. S. v. Prock, D.C., 105 F.Supp. 263; U. S. v. 178 Gambling Devices, D. S., 107 F.Supp. 394.

■ The term "dealer" as used in the Act will be defined by applying the usual and ordinary meaning, and the ordinary acception of the term as applied to an article or commodity means one who buys and sells that commodity in the usual course of trade. Hence, owners, users and operators of such devices are not "dealers" within the meaning of the Act [3].

■ This proceeding being "In Rem" for the condemnation and forfeiture of the devices, it must appear that the devices were guilty of a violation of the Act.

■ Where the only transactions in which the devices are involved are purely intrastate transactions, and it being neither shown nor contended that the devices moved in interstate commerce since the passage of the Act, such devices are not subject to forfeiture.

■ Where the evidence shows that a dealer in gambling devices, doing only an intrastate business, has failed to register in accordance with the requirements of the Act, and has possessed, repaired, sold and used such gambling devices only within the State, the Act does not authorize the seizure and destruction of such devices, since to give the Act that construction would give to it the effect of regulating intrastate commerce, which under the facts in this case is beyond the constitutional power of Congress [4].

It is contended that the seizure of the gambling devices was illegal and violative of the Fourth Amendment to the Constitution of the United States which states that:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall be issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

■ Rule as to illegal searches and seizures applies to forfeiture cases. U. S. v. Plymouth (1941) Coupe, 3 Cir., 182 F.2d 180.

■ In determining whether or not there was a violation of rights the "total atmosphere of the case" will be considered. U. S. v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 435, 94 L.Ed. 653.

■ In determining whether search can be made without a warrant, each case must stand on its own facts. Turner v. Camp, 5 Cir., 123 F.2d 840.

■ The law is clear that the right guaranteed by the Fourth Amendment to the Constitution to the people against unreasonable searches and seizures is a privilege and immunity personal to the individual which may be waived by the individual's consent if given voluntarily [5], and as to whether such consent is so given is a question of fact to be determined [6]. Here the gambling devices were voluntarily surrendered and the seizure was not invalid nor in violation of the constitutional rights of the owner.

### Judgment.

In accordance with the foregoing findings and conclusions, it is

Considered, ordered and adjudged that upon the expiration of time for an appeal and no appeal is filed, or after final judgment if affirmed on appeal, the United States Marshal is authorized and directed to deliver the described gambling devices to American Legion, Harold Douglas Maloney Post, No. 252, Inc.

3. U. S. v. 200 Gambling Devices, D.C., 103 F.Supp. 886.

4. U. S. v. 178 Gambling Devices, supra.

5. Davis v. U. S., 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453.

6. In re Fried, 2 Cir., 161 F.2d 453, at page 457, 1 A.L.R.2d 996.