**UNITED STATES of America,
Plaintiff,**

v.

**Robert J. ANSANI, Harvey Milner, John Edward Moore, alias Claude Maddox, alias John Manning, Joseph J. Aiuppa, and Ray Johnson, co-partners doing business as Taylor & Company, Defendants.**

**No. 54 Cr. 556.**

United States District Court
N. D. Illinois, E. D.

Jan. 5, 1955.

See also 138 F.Supp. 454.

Robert Tieken, U. S. Dist. Atty., by Raymond C. Muller, Asst. U. S. Atty., Chicago, Ill., for the U. S.

George F. Callaghan, Chicago, Ill., for defendants Moore and Aiuppa.

Samuel S. Brown, Chicago, Ill., for defendants Ansani, Milner and Johnson.

CAMPBELL, District Judge.

This is a four-count indictment, charging each of the five defendants with violations of the penal provisions of Chapter 24 of Title 15, enacted in 1951, found in 15 United States Code Annotated, at § 1171 and following. Section 2 of the Chapter provides that it shall be unlawful "knowingly to transport any gambling device to any place in a State * * *."

I eliminate some.

" * * * from any place outside of such State." The Section does not apply to the transportation of gambling devices to a State, or a subdivision of a State, which has enacted a law providing for the exemption of the State or subdivision from the provisions of the Section. Section 3 of the Chapter provides that each manufacturer of or dealer in gambling devices shall register his name and address with the Attorney General upon first engaging in business, and thereafter upon the first day of July of each year. Section 3 also provides that each manufacturer of or dealer in gambling devices shall file monthly records of all sales and deliveries of gambling devices, together with an inventory with the Attorney General. Section 4 of the Chapter provides that all gambling devices, when shipped or transported, shall be plainly labeled or marked so that the name and address of the shipper and consignee and the contents of the package may be readily ascertained on an inspection of the outside of the package.

Count one of the indictment charges that on February 26, 1954, the five de-

fendants, knowingly shipped and caused to be transported in interstate commerce four mechanical devices known as "trade boosters," which are alleged to be essential parts of slot machines. It is alleged that the defendants shipped these "trade boosters" from Chicago, Illinois, to Williamsport, Pennsylvania, and that neither the City of Williamsport nor the State of Pennsylvania had enacted any law providing for the exemption of said City or said State from the provisions of Section 2. Count two of the indictment charges that the five defendants knowingly failed to file with the Attorney General any inventory and record of sales and deliveries of gambling devices for the month of February, 1954, including a record of the sale and delivery of the four "trade boosters" alleged in count one of the indictment. Count three charges that the defendants knowingly failed to register with the Attorney General as dealers in gambling devices. Count four charges that the defendants knowingly shipped four "trade boosters" on February 26, 1954, as alleged in count one, without plainly marking the containers to indicate that they contained gambling devices. The defendants have moved to dismiss each of the four counts of the indictment.

Counts one and four shall be considered together, for they both relate to the actual transportation of the alleged gambling devices. They charge that the defendants shipped gambling devices in interstate commerce, and that the devices so shipped were not placed in plainly marked packages. Only two of the many points raised by the defendants with respect to these counts in my opinion deserve comment. First, with respect to count one, the defendants point out that the indictment charges them with transportation of a device known as a "trade booster," which is "a subassembly and essential part intended to be used in connection with so-called slot machines." The defendants contend that the statute does not define "gambling device" to include a subassembly and essential part

of a slot machine. The relevant parts of Section 1 of the Statute read as follows:

"As used in this chapter—

"(a) The term 'gambling device' means—

"(1) any so-called 'slot machine' or any other machine or mechanical device an essential part of which is a drum or reel with insignia thereon * * *.

* * * * * *

"(3) any subassembly or essential part intended to be used in connection with any such machine or mechanical device."

According to the defendants, "any such machine or mechanical device", as used in subsection 1(a) (3), refers to the phrase "any other machine or mechanical device" in subsection 1(a) (1), so that the subsection 1(a) (3) cannot refer to subassemblies or essential parts of "any so-called 'slot machine.'" In my opinion it need only be said in answer that under the accepted canon of construction the phrase "any other machine", in subsection 1(a) (1), modifies the phrase "any so-called 'slot machine'", and includes only machines of the same general class as slot machines. It is therefore clear that subsection 1(a) (3) is limited to subassemblies of slot machines and other machines which have the general characteristics of slot machines, and that the indictment, which charges the transportation of subassemblies of slot machines, states an offense against the United States, as defined in the Statutes.

Second, with respect to count four, the defendants argue, on the basis of United States v. Five Gambling Devices, 346 U.S. 441, 74 S.Ct. 190, 98 L.Ed. 179, decided by the Supreme Court of the United States in 1953, that Section 4 of Chapter 24 relates to both interstate and intrastate transactions, and is therefore unconstitutional. However, in United States v. Five Gambling Devices, the Supreme Court construed the statute to relate only to interstate transactions, and

this indictment clearly charges an interstate shipment. The same answer might be made to similar challenges to counts two and three of the indictment—these counts relate to a shipment of gambling devices from Illinois to Pennsylvania, and arguments based on the case of United States v. Five Gambling Devices, which was limited to intrastate shipments, are wholly without merit, in this case.

I have carefully considered other objections to counts one and four of the indictment, as raised by the defendants, and I have found them to be without merit; accordingly, the motions to dismiss counts one and four shall be denied.

■ Counts Two and Three: These counts charge violations of the registration provisions of Chapter 24, and, in my opinion, they raise a grave constitutional question. As I have already indicated, the statute makes it unlawful to transport gambling devices in interstate commerce. Section 3 of the Act, under which counts two and three of the indictment are brought, require manufacturers of and dealers in gambling devices to register with the Attorney General once each year, and to file with the Attorney General a record of sales and deliveries once each month. If, as the Supreme Court has decided, the statute must be limited to unlawful interstate shipments, do not these registration provisions contravene the Fifth Amendment to the Constitution, which guarantees that "No person * * * shall be compelled in any criminal case to be a witness against himself."? A partial answer is supplied by United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754, decided in 1953, also by the Supreme Court. It was there held that a requirement that persons engaged in the business of accepting wages must register with the Collector of Internal Revenue did not deny to them their privilege against self-incrimination. To use the language of the Kahriger opinion, 345 U.S. at page 32, 73 S.Ct. at page 515, "that privilege has relation only to past acts, not to future acts that may or may not be committed." When this principle is applied

to the statute challenged in the instant case, it is clear that the clause of Section 3 which requires merely that dealers in gambling devices register with the Attorney General does not contravene the Fifth Amendment. Count 3 of the indictment charges nothing more than failure to so register with the Attorney General, and the motion to dismiss that count shall be denied.

A more troublesome question arises with respect to count two of the indictment, which charges that the defendants failed to file with the Attorney General a record of sales and deliveries of gambling devices once each month, and particularly in February, 1954, when four "trade boosters" were allegedly shipped from Illinois to Pennsylvania, as required by Section 3 of the statute. The relevant part of Section 3 provides:

"* * * it shall be unlawful for any manufacturer or dealer to manufacture, recondition, repair, sell, deliver, or ship any gambling device * * * without filing monthly the required inventories and records of sales and deliveries."

As I have already pointed out, it was decided in United States v. Five Gambling Devices, quoted above, that this section, like all others in Chapter 24, relates only to interstate shipments; it must follow, then, that every sale or delivery required to be reported by Section 3 is an unlawful sale or delivery. The section thus demands that every dealer in gambling devices render a monthly report of acts already declared by the Supreme Court of the United States to be unlawful.

The question presented, in my opinion, is quite simple: does this penalty for failure to report unlawful acts violate the privilege against self-incrimination contained in the Fifth Amendment to the Constitution? I do not reach any of the problems which are usually raised when natural persons assert the privilege as a bar to the seizure of corporate or other "non-personal" records; those problems have no place here. The required reports here are personal reports in every sense

of the term—they are not public records, outside the protection of the Constitution, as was the case in Shapiro v. United States, reported in 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787, decided in 1948. A dealer in gambling devices, a natural person entitled to the personal guarantees in our Bill of Rights, is compelled by a penal statute to report his unlawful acts. To say that these required reports become public documents is to erase the Fifth Amendment from the Constitution. Nor do I reach the problems which usually arise when some grant of immunity is extended by Congress, for registrants under Section 3 of this statute are granted no immunity whatever. The problem here, as I see it, is as simple as it would be if all burglars, for example, were required to file monthly reports of burglaries perpetrated during the preceding month, together with an inventory of all stolen goods. Such a requirement would certainly simplify the apprehension and prosecution of burglars; but it would be repugnant to the Fifth Amendment to our Constitution, of the United States.

Our basic law prevents the Government from compelling any man to give evidence of his own crimes. This guaranty, as embodied in the Fifth Amendment, may have been more meaningful to Americans in the Eighteenth Century when the rack and the screw were still fresh in the minds of men; but it should be just as meaningful today. Even modern history shows that a Government which too willingly abandons some of its fundamental law to combat a temporal evil, soon loses all of its law. Certainly, a statute which compels a man to list his crimes under penalty of prison would insure the punishment of many criminals who would otherwise remain unpunished. But such insurance is too costly for any free people, for it may be bought only with a surrender of a good measure of their liberty.

■ I, therefore, am compelled to declare that part of Section 3 of Chapter 24 of Title 15 which provides that it is unlawful for any dealer in gambling devices to sell, deliver, or ship any gam-bling device without filing monthly certain required inventories and records of sales and deliveries with the Attorney General is repugnant to the Fifth Amendment to the Constitution of the United States. Accordingly, the motion of the defendants to dismiss Count Two of the indictment is granted, and the said count is dismissed.

For the reasons heretofore stated, the motions of the defendants to dismiss Counts One, Three, and Four of the indictment are denied.