**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert J. ANSANI, Harvey Milner, John Edward Moore, Joseph J. Aiuppa and Ray Johnson, Defendants-Appellants.**

No. 11729.

United States Court of Appeals
Seventh Circuit.

Jan. 15, 1957.

Rehearing Denied Feb. 1, 1957.

George F. Callaghan, William Scott Stewart, Samuel S. Brown, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Edwin A. Strugala, John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before MAJOR, SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

The defendants were convicted, under one count of failing and refusing to register as dealers in gambling devices in violation of Section 1173, Title 15 U. S.C.A.; and, under another count, the defendant Ansani was also convicted of shipping and causing to be transported in interstate commerce certain gambling devices in violation of Section 1172, Title 15 U.S.C.A. Each of the defendants was sentenced to imprisonment for one year and one day and fined $1,000.00. The decision of the District Court is reported in United States v. Ansani, D.C.N.D.Ill., 138 F.Supp. 454.

Numerous points are raised by defendants, the most substantial of which is whether the devices in question, i.e., certain "trade boosters," are gambling devices as defined in 15 U.S.C.A. § 1171 (a) (3).

The trade booster is an electrically operated device. It consists of a steel cabinet containing various electrical circuits and two control units. Functionally the device is useless unless employed in conjunction with another appliance, which in the instant case was a slot machine. The slot machines on which trade boosters were used were altered or modified by removing the slots into which coins were inserted to activate the machines and the slots from which money was discharged from the machines. In this denuded condition the slot machine was mechanically inoperable. After these mechanical modifications, the trade booster and the slot machine were connected and the various electrical circuits permitting joint operation were put in place. The trade booster enabled the slot machine to be operated by re-mote control and thus eliminated the necessity of coin activation. One of the control units was placed either next to or inside of the slot machine; the other unit was placed within reach of the custodian. One who wished to play the machine paid the custodian for the number of games he desired. The custodian pressed a "credit" button on the control unit which registered the number of games purchased and the game was then played as it was before the conversion. Games won were merely registered on the machine, as the pay off mechanism had been removed. The games won could be cashed in, the player receiving his pay off from the custodian. A cancel push button removed the games that were cashed in from an indicator on the front of the machine and registered them on the control unit inside the slot machine. After it was altered to operate with the trade booster, the slot machine was inoperable without the trade booster.

The Johnson Act defines gambling device as follows:

"§ 1171. Definitions

"As used in this chapter—

"(a) The term 'gambling device' means—

"(1) any so-called 'slot machine' or any other machine or mechanical device an essential part of which is a drum or reel with insignia thereon, and (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (B) by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property; or

\* \* \* \* \*

"(3) any subassembly or essential part intended to be used in connection with any such machine or mechanical device." 15 U.S.C.A. § 1171.

Defendants contend that a trade booster transforms a slot machine into a nongambling device for amusement only.

They argue that after the slot machine has been altered in such a way that its slot is so obstructed as to prevent the insertion of a coin to activate it, and its pay off mechanism has been removed, it is no longer a slot machine; and, therefore, a trade booster is not a subassembly or essential part of a slot machine. The difficulty with this argument is that it dwells on nonessentials and completely ignores the fact that after the trade booster is attached, the machine performs precisely the same function as an unconverted slot machine, i.e., it is a machine or device "an essential part of which is a drum or reel with insignia thereon * * * by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property * * *." Section 1171 does not require that a slot machine be a coin activated device nor that winnings be delivered automatically. The statute is clear on these points for "gambling device" is defined as "any so-called 'slot machine' *or any other machine or mechanical device* * * * by the operation of which a person *may become entitled* * * *." A slot machine is not a gambling device merely because it has coin slots or an automatic pay off mechanism. It is a gambling device because its function and design are to allow one to stake money or any other thing of value upon the uncertain event of achieving the winning combination of insignia. Essentially the game is played as it was before the alteration or modification; and we cannot believe that a player would classify the machine differently after the conversion. Defendants' advertising literature recognized this fact when it stated:

"Convert your game and STOP being fouled up with laws on gambling devices · the complete game [slot machine and trade booster] have been thoroughly location tested and the playing public love it *and play it like they used to play a standard bell machine*." (Emphasis added.)

Defendants have attempted to accomplish, or rather, permit others, i. e., owners of slot machines, to accomplish, by indirection that which they cannot accomplish directly. The Johnson Act clearly encompasses a slot machine equipped with a trade booster. United States v. Three (3) Trade Boosters, D.C. M.D.Pa., 135 F.Supp. 24.

The slot machines to which the trade boosters were attached are not involved in this cause except to the extent necessary to determine whether the trade booster is a "subassembly or essential part intended to be used in connection with any such machine or mechanical device." 15 U.S.C.A. § 1171(a) (3). Therefore, the fact that the slot machines were not shown to have been in interstate commerce is of no significance.

We therefore turn to the question of whether the trade booster is a subassembly or essential part of a so-called slot machine. Defendants argue in the negative on the grounds that the trade booster must be a subassembly or essential part in the original design of the slot machine without conversion; that the purpose of subsection (a) (3) was to prohibit evasion by shipment of a slot machine in separate packages; and that the trade booster may be used in conjunction with nongambling devices.

It is, of course, true that a trade booster is not a subassembly or essential part of a slot machine as the latter was initially designed and manufactured. But the trade booster performs precisely the same function as the coin slots and pay off mechanism previously performed in an unaltered slot machine. Therefore, to the extent that the coin slots and pay off mechanism were subassemblies or essential parts of an unaltered machine, the trade booster is equally a subassembly or essential part in the machine's altered or deslotted condition because the altered slot machine cannot be operated without the trade booster. The logic of defendants' argument would also exclude from the coverage of the Act replacement parts for a slot machine which had not been altered

a result which clearly was not within the legislative intention. Defendants' contention that the purpose of subsection (a) (3) was to prohibit evasion by piecemeal shipment of a gambling device is in part correct, but the language employed by Congress is not so limited, and the construction urged by defendants would thwart in large part the intent of Congress in the enactment thereof. Subsection (a) (3) is directed at evasion in general, not one particular means.

■ Defendants also argue that a trade booster is not a subassembly or essential part of a slot machine because it may be employed with any type of device, gambling or nongambling, that may be used to record a score or any device through which electrical impulses may be registered. If this be true it furnishes no defense because the trade boosters here in question were *shipped* to be used and were used in connection with so-called slot machines. Section 1171 does not require that any subassembly or essential part be such only as to the gambling devices defined in subsections (a) (1) and (2). The fact that the various parts of a slot machine may be employed in a nongambling appliance does not render such parts any less subassemblies or essential parts of a slot machine. It is sufficient for the purpose of Section 1171 that any subassembly or essential part is "intended to be used in connection with any such machine or mechanical device." Defendants' advertising literature and booklet of service instructions for the trade boosters clearly indicate that they were "intended to be used in connection with" so-called slot machines; and the defendant Ansani so explained their use to a government agent.

Furthermore, the testimony of defendants' witness Schuyler, the designer of the trade booster, demonstrated that while the trade booster may be used in connection with nongambling appliances, e.g., cash registers and juke boxes, such use of the trade boosters was rare. The witness was hard pressed to explain any reasonable purpose that would be served by using the trade booster with these or any devices other than altered slot machines.

■ We conclude that the trade boosters in question were subassemblies or essential parts intended to be used in connection with so-called slot machines or mechanical devices as further defined in Section 1171, Title 15 U.S.C.A.

Defendants next urge that the registration provisions of Section 1173, 15 U.S.C.A., violate the Fifth Amendment because they compel a defendant to give evidence against himself which may be used in a criminal proceeding.

Section 1173 provides:

"Upon first engaging in business, and thereafter on or before the 1st day of July of each year, every manufacturer of and dealer in gambling devices shall register with the Attorney General his name or trade name, the address of his principal place of business, and the addresses of his places of business in such district. On or before the last day of each month every manufacturer of and dealer in gambling devices shall file with the Attorney General an inventory and record of all sales and deliveries of gambling devices as of the close of the preceding calendar month for the place or places of business in the district. The monthly record of sales and deliveries of such gambling devices shall show the mark and number identifying each article together with the name and address of the buyer or consignee thereof and the name and address of the carrier. Duplicate bills or invoices, if complete in the foregoing respects, may be used in filing the record of sales and deliveries. For the purposes of this chapter, every manufacturer or dealer shall mark and number each gambling device so that it is individually identifiable. In cases of sale, delivery, or shipment of gambling devices in unassembled form, the manufacturer or dealer shall separately mark and number the components of each

gambling device with a common mark and number as if it were an assembled gambling device. It shall be unlawful for any manufacturer or dealer to sell, deliver, or ship any gambling device which is not marked and numbered for identification as herein provided; and it shall be unlawful for any manufacturer or dealer to manufacture, recondition, repair, sell, deliver, or ship any gambling device without having registered as required by this section, or without filing monthly the required inventories and records of sales and deliveries."

■ Count II of the indictment, which charged that defendants unlawfully failed and refused to file with the Attorney General any inventory or record of sales and deliveries of gambling devices, was dismissed by the District Court on the ground that this requirement of Section 1173 was repugnant to the Fifth Amendment. United States v. Ansani, D.C.N.D.Ill., 138 F.Supp. 451. The government has not appealed this determination so the only question before us is whether that part of Section 1173 which requires registration by dealers upon first engaging in business is violative of the Fifth Amendment. This registration requirement is obviously prospective. It contemplates the filing of required information before the dealer commences business. Defendants are not compelled to confess to acts already committed, they are merely informed of the conditions upon which they may do business in the future. They make their own decision as to whether or not they will ship in interstate commerce the proscribed devices. Moreover, the Act does not prohibit interstate shipments to places in any state or any subdivision thereof if the state has enacted a law providing for exemption from the Act. 15 U.S.C.A. § 1172. Thus, there is no necessary violation of the Act even if shipments are made. Since the privilege against self-incrimination relates only to past acts, the privilege has no just application to the situation before us.

United States v. Kahriger, 345 U.S. 22, 32, 73 S.Ct. 510, 97 L.Ed. 754; Lewis v. United States, 348 U.S. 419, 422, 75 S.Ct. 415, 99 L.Ed. 475. Furthermore, since defendants failed to register, the question arises whether they now can claim the privilege even assuming that the disclosure of criminal acts is required. See United States v. Sullivan, 274 U.S. 259, 263–264, 47 S.Ct. 607, 71 L.Ed. 1037.

■■ Defendants also contend that since the mandate of Section 1173 is not expressly confined to dealers in gambling devices in interstate commerce, it is constitutionally defective. District court decisions have held as a matter of statutory construction that the Act does not reach purely intrastate matters, United States v. Denmark, D.C.S.D.Ga., 119 F. Supp. 647; United States v. Braun, D.C. S.D.Ga., 119 F.Supp. 646; United States v. 5 Gambling Devices, D.C.N.D.Ga., 119 F.Supp. 641; United States v. 15 Mills Blue Bell Gambling Machines, D.C.M.D. Ga., 119 F.Supp. 74; United States v. 178 Gambling Devices, D.C.S.D.Ill., 107 F.Supp. 394, and the Supreme Court has stated that it cannot say such an interpretation is not permissible. United States v. Five Gambling Devices, 346 U. S. 441, 450, 74 S.Ct. 190, 98 L.Ed. 179. In any event, defendants cannot raise the constitutional issue. Since defendants were, in fact, interstate dealers in gambling devices, their constitutional rights have not been violated for we do not understand defendants to challenge the power of Congress to prohibit or regulate the interstate movement of gambling devices and to require registration for the purpose of making such prohibition or regulation effective. It is a fundamental rule of constitutional law that an act of Congress will not be held invalid on the objection of a party whose interests are not affected by it in a manner which the Constitution forbids. If the application of Section 1173 to another fact situation presents a constitutional question, we must wait until that situation is properly before this court. And it does not appear, nor do defendants so

argue, that if the statute is invalid as against an intrastate dealer it is also invalid as against an interstate dealer. Nor is it necessary to the decision of this case that this court decide as a matter of statutory construction that Section 1173 does not reach purely intrastate matters. Whatever the ultimate construction of the statute may be, defendants are clearly within its mandate.

 Defendants insist that the trial court erred in denying their motions for a bill of particulars. The motions enumerated various requests for particulars under the respective counts of the indictment. The object of a bill of particulars is to furnish the defendant the particular facts or information concerning the charge against him to enable him to prepare his defense. United States v. Glasser, 7 Cir., 116 F.2d 690, 702, modified on other grounds 315 U.S. 60. The trial court's action on the application is discretionary and should not be disturbed in the absence of abuse of discretion. Wong Tai v. United States, 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545. It is apparent from the record that the trial court did not abuse its discretion in denying the respective motions. In addition, the motions were properly denied because defendants attempted to secure legal theory, not facts, Kempe v. United States, 8 Cir., 151 F.2d 680, 685, such facts and information as were sought were within the knowledge of defendants, Zito v. United States, 7 Cir., 64 F.2d 772, 773, or the defendants were in possession of the means of ascertaining the facts requested, United States v. Skidmore, 7 Cir., 123 F.2d 604, 607.

 Defendants claim that there was a variance between the place alleged and proved for the commission of the offense. The indictment alleged Chicago, Illinois, and the government proved Cicero, Illinois. Both places were in the same venue as alleged and within the jurisdiction of the court. No claim of surprise or deception is made. Therefore, the variance was immaterial. Ledbetter v. United States, 170 U.S. 606, 613–614, 18 S.Ct. 774, 42 L.Ed. 1162; Cagnina v. United States, 5 Cir., 223 F. 2d 149. And, if necessary, the record will afford defendants protection against a subsequent prosecution for the same cause. Norris v. United States, 5 Cir., 152 F.2d 808, 811, certiorari denied 328 U.S. 850, 66 S.Ct. 1118, 90 L.Ed. 1623.

 Defendants attack the indictment on the ground that Count III, charging violation of the registration requirement of Section 1173, fails to allege that defendants were interstate dealers in gambling devices. An indictment is sufficient that charges a statutory crime substantially in the language of the statute. United States v. O'Toole, D.C.D. R.I., 101 F.Supp. 123, 127. The charge of the indictment in the instant case followed substantially the wording of the statute, which embodies all the elements of the crime and such charge clearly informed the defendants of that with which they were accused, so as to enable them to prepare their defense and to plead the judgment in bar of any subsequent prosecution for the same cause. Under these circumstances defendants' contention must fail. Jelke v. United States, 7 Cir., 255 F. 264; cf. United States v. Nickerson, 7 Cir., 211 F.2d 909.

 Defendants continue, insisting that Count III is duplicitous in charging both a failure by defendants to register with the Attorney General *or* the United States Attorney for the Northern District of Illinois. This objection is raised for the first time in this court. An objection of inconsistency, duplicity or repugnancy comes too late when raised for the first time on appeal. Harris v. United States, 10 Cir., 190 F. 2d 503, 505. Furthermore, defendants advance only a technical claim based on the use of the disjunctive "or." The indictment did not charge defendants in the alternative with having committed one or another of several offenses. Only one offense was charged of which defendants were well aware. See Johnson v. United States, 5 Cir., 207 F.2d 314, 319–320, certiorari denied 347 U.S. 938, 74 S.Ct. 632, 98 L.Ed. 1087.

Defendants insist that Count III of the indictment is void because venue is fixed at Chicago, Illinois, in the Northern District of Illinois, whereas Section 1173 directs that the registration of dealers in gambling devices must be made with the Attorney General. It is correct that Section 1173 designates the Attorney General as the registrar under the Act and that the office of the Attorney General, as head of the Department of Justice, is located in the District of Columbia. However, the Attorney General, pursuant to R.S. § 161, 5 U.S.C.A. § 22, promulgated a regulation providing that registration in the Northern District of Illinois shall be made "with the attorney general at the office of the United States Attorney, 219 South Clark Street, Chicago, Illinois * * *." Dept. of Justice Order No. 4173, 28 C.F.R. 1952 Supp., § 3. Under Section 22, the Attorney General, as head of the Department of Justice, "is authorized to prescribe regulations, not inconsistent with law, for the government of his department, * * * the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it." A regulation by a department of the government addressed to and adapted to the enforcement of an act of Congress, the administration of which is confided to such department, has the force and effect of law, unless in conflict with express statutory provision. Rosen v. United States, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406. The regulation in question merely implements the Act in accordance with the authority granted by Section 22. Cf. United States v. Morehead, 243 U.S. 607, 37 S.Ct. 458, 61 L.Ed. 926. There is no inconsistency between the regulation and the designation of the Attorney General as the registrar under the Act. The United States Attorneys are representatives or officers of the Department of Justice and the Attorney General. Sullivan v. United States, 348 U.S. 170, 173–174, 75 S.Ct. 182, 99 L.Ed. 210; Reorganization Plan No. 2 of 1950, § 1, 64 Stat. 1261, 5 U.S.C.A. note following section 133z–15. It would appear that even before the regulation that the required information sent to the Attorney General through a local United States Attorney would have amounted to compliance. In any event, our conclusion herein is supported by Section 2 of Reorganization Plan No. 2 of 1950, which provides:

"Sec. 2. The Attorney General may from time to time make such provisions as he shall deem appropriate authorizing the performance by any other officer, or by any agency or employee, of the Department of Justice of any function transferred of [to] the Attorney General, including any function transferred to the Attorney General by the provisions of this reorganization plan." 64 Stat. 1261.

The court is of the opinion that the Attorney General in the exercise of granted powers lawfully designated the United States Attorney for the Northern District of Illinois as his representative for registration purposes in that district. Therefore, this action was properly filed in the Northern District of Illinois.

All of defendants' other points have received full consideration and have been found to be without merit.

The judgment of the District Court is

Affirmed.