UNITED STATES of America,
Libelant,

v.

420 GAMBLING DEVICES contained in 42 wooden crates as follows: Serial No. 445767, etc.

No. 60–M–994.

United States District Court
E. D. New York.

Feb. 6, 1961.

Cornelius W. Wickersham, Jr., U. S. Atty., by James FitzSimons, Asst. U. S. Atty., Brooklyn, N. Y., for libelant.

Robert J. Lederman, New York City, for claimant.

RAYFIEL, District Judge.

On October 24, 1960 the United States of America filed its libel herein under Section 1177 of Title 15, United States Code Annotated, seeking the condemnation and forfeiture of some 420 gambling devices contained in 42 crates, which were seized by agents of the Federal Bureau of Investigation in the Borough of Brooklyn, within the jurisdiction of this Court, by reason of the alleged violation of Sections 1172, 1173 and 1174 of said Title.

The libel alleges that the said gambling devices are owned or claimed by M. C. S. Export Company, Inc., United Supply Automatic, Max Messenger and Sam Gold, and, when seized, had been shipped from the State of Kentucky to the State of New York; that neither said gambling devices nor the crates in which they were contained were labeled and marked so that the names and addresses of the consignor and consignee or the contents of said crates could be ascertained upon inspection of the outside thereof, nor were the said gambling devices listed in any inventory or record filed with the Attorney General of the United States; further, that after the aforementioned seizure the said gambling devices came into the custody of the Federal Bureau of Investigation, and were placed in storage at the Brooklyn Army Terminal, in Brooklyn, New York, and that the instant proceeding has been commenced at the direction and by authority

of the said Attorney General. See Section 1177.

The testimony of Agent Kennedy, of the Federal Bureau of Investigation, clearly established that there was probable cause for the seizure of the gambling devices in question.

On or about October 25, 1960 the United States Marshal for this District caused to be served upon the claimant herein a notice of attachment, accompanied by a monition and libel, and thereafter the claimant, M. C. S. Export Co., Inc., filed its Notice of Claim of Ownership and Unlawful Seizure, an Undertaking for Costs, and its answer to the libel, wherein it admitted that the devices in question were seized within the Eastern District of New York and the jurisdiction of this Court, that M. C. S. Export Co., Inc., was the owner thereof, that it is not registered with the Attorney General, and that the said devices were not listed in any inventory or record filed with the Attorney General or his designee, but claimed that the crates in question were being shipped in an unbroken course in foreign commerce from the State of Kentucky to London, England, and were "plainly and clearly marked so that the name and address of the shipper and of the consignee and the nature and content of the 42 crates were readily ascertainable upon inspection."

On December 7, 1960 a stipulation was entered into wherein the parties agreed, *inter alia,*

(1) that the devices seized as aforesaid are gambling devices, as defined in Section 1171 of Title 15, United States Code Annotated;

(2) that at the date of such seizure the claimant was, and now is, the owner thereof;

(3) that the claimant purchased the said devices in the State of Kentucky, and caused them to be delivered to H. J. Hosea & Sons Company, packers, in Newport, Kentucky, for packaging and labeling, and instructed said Company to crate them, mark the crates, and deliver them to the Newport, Kentucky, office of National Carloading Company, to be there placed upon two trucks and trailers, and consigned to "King Shipping Co., Pier at foot of 35th Street, Brooklyn, New York," under a bill of lading, a memorandum of which was received in evidence as Government's Exhibit No. 3. The bill of lading which accompanied the shipment was expressly made a part of the said stipulation, which was received in evidence as Government's Exhibit No. 1;

(4) that the seizure of the said devices was effected in New York, during the course of their transportation from Newport, Kentucky, to the pier at 35th Street, Brooklyn;

(5) that the claimant has never registered with the Attorney General of the United States, or his designee, or filed with either of them monthly inventories and records of any sales or deliveries of gambling devices;

(6) that the said devices were marked as indicated on the schedules and exhibits annexed to and made a part of the libel and of the said stipulation, and as indicated on certain photographs, likewise made a part of said stipulation;

(7) that on October 7, 1960 the claimant contracted with King Shipping Company for the shipment and export of the 42 crates containing the said 420 gambling devices to United Supply Automatic, London, England, and on October 10, 1960 said King Shipping Company prepared in triplicate the United States Customs Declaration containing the necessary information, and delivered the same to the United States Customs Bureau, New York City, where the same was authenticated by said Bureau, which assigned a number to the proposed shipment and caused it to be stamped thereon; that thereafter King Shipping Company arranged with United States Lines, New York City, for the shipment of said crates to London, England, filed the necessary amendments to said Customs Declaration, and lodged dock receipts on the pier at the foot of 35th Street, Brooklyn.

Those facts, then, are undisputed, and the Government takes the position that

they constitute a violation of Sections 1172, 1173 and 1174 of Title 15 of the United States Code Annotated.

Section 1172, in pertinent part, reads as follows: "It shall be unlawful knowingly to transport any gambling device *to any place in a State, the District of Columbia, or a possession of the United States from any place outside of such State, the District of Columbia, or possession:* Provided, That this section shall not apply to transportation of any gambling device to a place in any State which has enacted a law providing for the exemption of such State from the provisions of this Section, or to a place in any subdivision of a State if the State in which such subdivision is located has enacted a law providing for the exemption of such subdivision from the provisions of this section. * * *" (Emphasis added).

The claimant takes the position that the shipment of said gambling devices, destined, as it concededly was, for England, was a transportation in *foreign* commerce, and, accordingly, does not come within the purview of Section 1172. The arguments urged by the Government in support of its contrary view respecting *that* Section (1172) are unpersuasive.

Sections 1171 to 1177, inclusive, of Title 15, U.S.C.A., were enacted for the specific purpose of supporting and assisting the several states in their enforcement of statutes making the possession, sale or use of gambling devices illegal. The bill, as originally introduced (S. 3357) was transmitted to the Congress by the Hon. J. Howard McGrath, then Attorney General of the United States, and grew out of the Attorney General's Conference of Federal, State and local law enforcement officials, who had adopted a resolution endorsing the proposed legislation, and requesting its transmittal to the Congress with a recommendation for its enactment. It was favorably reported by the Senate Committee in its charge, and appeared on the Senate Consent Calendar on April 19, 1950, when it was passed without debate.

It is true that Section 2 of the bill, as then passed, prohibited the transportation of gambling devices in interstate *and foreign* commerce. However, the Interstate and Foreign Commerce Committee of the House of Representatives, after holding several hearings during its consideration of the bill, proposed a number of amendments, several of which involved Section 2 thereof (now Section 1172, supra). The one here pertinent eliminated from the Senate bill the provision proscribing the transportation of gambling devices in *foreign* commerce. The Committee Report (House Report No. 2769, U.S.Code Congressional Service 1950, p. 4246) respecting that amendment states: "Your Committee felt that this provision went further than necessary and desirable *to effectuate the objective of assisting State and local law enforcement.* Furthermore, this provision would have made unlawful the exportation of gambling devices to foreign countries regardless of whether the national policy of such country permitted the use of gambling devices." The last stated reason is consistent with that provision of Section 1172, supra, which permits *even interstate* transportation of gambling devices, when made to states or subdivisions thereof which have enacted laws providing for their exemption from the provisions thereof. The Committee was probably influenced also by a communication received from the Department of State, expressing its concern over the effect the "foreign commerce" provision of the Statute might have on *our* foreign commerce.

The said House Report makes manifest that the purpose and objective of the bill was to aid in strengthening State and local enforcement, when it states: " * * * your committee is in complete agreement with the views of the Attorney General with respect to the purpose of the recommended legislation, as stated by the representative of the Attorney General in the course of the hearings (hearings, p. 55): 'The *only* thing that the Federal Government is being asked to do under this bill is to stop, *in the*

*channels of interstate commerce,* the shipment of these machines which the States are powerless to keep out of the channels of *interstate · commerce* * * * ' " p. 4244 (Emphasis added).

In the case of United States v. Prock et al., D.C., 105 F.Supp. 263, 264, a criminal prosecution for the alleged violation of Sections 1172 and 1173, supra, by the transportation of gambling devices from Texas to the Foreign Trade Zone in New Orleans, (See Sections 81 (a) to 81(u) of Title 19, U.S.Code,) Judge Kennerly, in granting a motion for a judgment of acquittal, said: "A reading of such Statute, * * * *and particularly Section 1172 thereof,* is convincing that it has no application either to shipments of gambling devices in intrastate commerce or in foreign commerce." (Emphasis added). I, too, am satisfied that since the shipment of the gambling devices in question was moving in *foreign* commerce the claimant did not violate Section 1172.

We come now to Sections 1173 and 1174, supra. Section 1173, so far as is here pertinent, provides that

"Upon first engaging in business, and thereafter on or before the 1st day of July of each year, *every* manufacturer of and *dealer in* gambling devices shall register with the Attorney General his name or trade name, the address of his principal place of business, and the addresses of his places of business in such district. On or before the last day of each month every manufacturer of and dealer in gambling devices shall file with the Attorney General an inventory and record of all sales and deliveries of gambling devices as of the close of the preceding calendar month for the place or places of business in the district. * * * For the purposes of this chapter, every manufacturer or dealer shall mark and number each gambling device so that it is individually identifiable. * * * It shall be unlawful for any manufacturer or dealer to sell, deliver, or ship any gambling device which is not marked and numbered for identification as herein provided; and it shall be unlawful for any manufacturer or dealer to manufac-

ture, recondition, repair, sell, deliver, or ship any gambling device without having registered as required by this section, or without filing monthly the required inventories and records of sales and deliveries." (Emphasis added).

Section 1174 reads as follows:

"*All* gambling devices, and *all packages containing any such,* when shipped or transported shall be plainly and clearly labeled or marked so that the name and address of the shipper and of the consignee, and the nature of the article or the contents of the package may be readily ascertained on an inspection of the outside of the article or package." (Emphasis added).

The claimant contends that the entire Statute (15 U.S.C.A. §§ 1171-1177, inclusive) is inapplicable to foreign commerce. In support of his position he relies first on the case of United States v. Prock, supra, involving facts substantially similar to those which obtain in the case at bar. There, as hereinabove stated, the defendant was charged in a 2-count indictment with the violation of Sections 1172 and 1173, supra. The latter count was dismissed upon motion of the United States Attorney at the close of the Government's case. At the conclusion of the entire case Judge Kennerly granted the defendant's motion for the dismissal of the count involving Section 1172, stating, in substance, that the entire Statute, "particularly Section 1172 thereof," does not apply to transportation of gambling machines in foreign commerce. As to Section 1172, I am in agreement with Judge Kennerly. As to Sections 1173 and 1174, however, I disagree, for the reasons hereinafter stated.

The claimant argues, further, that the legislative history of the Statute supports his contention that the elimination from Section 2 of the original Senate bill (now 1172, supra) of the reference to foreign commerce was intended to and did make the remaining sections of the Statute inapplicable to shipments in foreign commerce. It is my considered opinion that the Statute's legislative history, far from supporting the claimant's contention, really negatives it, for

throughout the reports there is abundant evidence of the concern expressed by State and local law enforcement officials over their problems in the investigation and prosecution of violations of their anti-gambling statutes, and of the desire and intent of the Congress to assist them in the solution of those problems. The exemption of foreign shipments from the regulatory provisions of Sections 1173 and 1174 would greatly impair the effectiveness of the Statute. It would, for instance, render simple the device of earmarking gambling machines for foreign shipment, and then upon or prior to their arrival at a port of embarkation, diverting them to a place within a state which proscribes their sale, use or possession. It seems clear from the history of the Statute, as disclosed by the various reports and the debates thereon, that the registration, filing and regulatory provisions of Sections 1173 and 1174, and the criminal and civil forfeiture sanctions, prepared, as they were, by the bill-drafting committee of the Attorney General's Conference, were included in the legislation to provide the means for surveillance and investigation which would be conducive to more effective enforcement of the anti-gambling statutes of the states.

In support of its claim that the provisions of Sections 1171–1177, supra, are applicable only to shipments in interstate commerce the claimant cites United States v. Five Gambling Devices, etc., 346 U.S. 441, 74 S.Ct. 190, 196, 98 L.Ed. 179. That case involved appeals from United States v. 5 Gambling Devices, D. C., 119 F.Supp. 641; United States v. Braun, D.C., 119 F.Supp. 646 and United States v. Denmark, D.C., 119 F.Supp. 647. The first of those cases was a proceeding for the forfeiture of certain gambling devices, and the others were criminal prosecutions. Each charged the libelee or defendant therein named with the violation of Section 1173, and each involved an *intrastate* shipment of gambling devices. In each case the District Judge found that Section 1173 was inapplicable to such shipments. Those

judgments, it is true, were affirmed, but not for the reason urged here by the claimant. Quite to the contrary, a majority of the Court expressed definitely different views. Justice Black, in a concurring opinion in which Justice Douglas joined, said [346 U.S. 441, 74 S.Ct. 196]. "The language of § 3 of the Act (Section 1173) on which the charges rest requires dealers to report 'all sales and deliveries of gambling devices  *  *  *.' No other language in the Act, and nothing in its legislative history, indicates to me that Congress was not here hitting at 'all sales,' including purely intrastate ones" (matter in parenthesis added). Justice Clark in a dissenting opinion in which the Chief Justice, Justice Reed and Justice Burton joined, said 346 U.S. at page 454, 74 S.Ct. at page 197, "I agree with Mr. Justice Black on the question of statutory construction, that § 3 of the Act means just what it says: 'every manufacturer of and dealer in gambling devices' is required to register with the Attorney General and file with him certain records, *without reference to interstate commerce.*" (Emphasis added). Six of the nine Justices, therefore, were in agreement that the Statute applied to all shipments of gambling devices.

The claim is also made that Section 1173 is vague, ambiguous and indefinite, thereby depriving the claimant of due process of law, in violation of the Constitution. That claim is based largely on the concededly vague phrases "in such district" and "in the district", which are not specifically defined or described. Those phrases are mere surplusage, apparently the result of legislative oversight. The language of the Section is otherwise definite and unequivocal. It requires the filing of certain clearly-described information with the Attorney General. Assuredly the claimant should have had no difficulty learning how to address a communication to the Attorney General. As Justice Clark, in commenting on the claim of statutory ambiguity raised in United States v. Five Gambling Devices, etc., supra, said,

346 U.S. at page 457, 74 S.Ct. at page 199, "In my view speculation is not here required, unless one seeks to avoid compliance with the law; I think that all who would comply with the law are sufficiently informed of what is required of them to assure that any bona fide attempt at compliance would be successful."

There is no doubt that the claimant was a dealer in gambling devices. Sidney Goodman, its Vice-President, testified during the taking of his deposition. received in evidence as Government's Exhibit No. 5, that the claimant has sold slot machines prior to the aforementioned seizure, and Sam Gold, an employee of M. C. S., who negotiated the purchase and sale of the seized devices, testified at the trial that on three occasions prior to the seizure the plaintiff had purchased similar gambling devices in the United States and sold and shipped them to customers in England. As a dealer, then, the claimant, having failed to comply with the requirements of Section 1173, supra, came within its purview.

But it would avail the claimant little even if the Supreme Court had held in United States v. Five Gambling Devices, etc., supra, that Section 1173 is unconstitutional, for it is charged also with failure to comply with the labeling provisions of Section 1174, and the Government has established such failure through exhibits received in evidence at the trial.

Among such exhibits were a number of photographs of the crates containing the gambling devices in question. The crates bear stenciled inscriptions including, among other things, the words "For Export," "Made in U S A," and the name and address of the proposed consignee of the shipment, reading as follows: "United Supply Automatic, London, England," but, virtually obliterated, apparently by the application of thick black paint, are the words "From M. C. S. Export Co." (the claimant). If the address of M. C. S. was included in the inscription it is not now legible. That appears

to have been the condition of all the crates involved in the case, and would constitute a violation of the provisions of Section 1174, supra.

Accordingly, judgment is granted to the libelant.

Submit proposed findings of fact, conclusions of law and decree in conformity herewith.